CLARK E. JACOBY, Appellant, v. MISSOURI VALLEY DRAINAGE DISTRICT OF HOLT COUNTY, MISSOURI, a Municipal Corporation; CHARLES E. SENTNEY, FRANK WALKER, A. B. CATON, GEORGE H. ALLABAC and HARRY MORRIS, Supervisors, constituting the Board of Supervisors of said District, and KATE GREEN, Treasurer of Holt County, Missouri, and FRED COTTIER, Collector of Holt County, Missouri.—163 S. W. (2d) 930.

Court en Banc, March 10, 1942.

Rehearing Denied, July 28, 1942.

*J. L. Milligan, C. B. Kimberly* and *Milligan & Kimberly* for appellant.

*Culver, Phillip, Kaufmann & Smith* for respondents.

LEEDY, J.—This is an action in twenty-eight counts, on as many warrants issued to plaintiff by defendant Missouri Valley Drainage District of Holt County (hereinafter referred to as the district) in sums ranging from $14.92 to $1132.58 and aggregating $11,405.92, for services rendered by plaintiff as chief engineer of said district. The

amended petition sought also the levy of an assessment to pay the indebtedness in question, and other relief. By further amendment, however, all such features were stricken, and so dropped out of the case, leaving the petition as praying merely for the judgment for the sums asked in the several counts thereof with interest. Judgment went for defendants below, and plaintiff appeals.

The cause was tried on an agreed statement of facts supplemented, on behalf of defendants, by the testimony of a single witness, the President of the Board of Supervisors of defendant district. The agreed facts, insofar as pertinent, are:

(1) That the district, containing 25,511.86 acres, was duly incorporated in the Holt Circuit Court, March 10, 1927, under the provisions of Article I, Chapter 64, R. S. '29 [Now Article I, Chapter 79, R. S. '39], and at the time of the institution of this suit, its Board of Supervisors consisted of the persons sued as such;

(2) That on May 28, 1927, the district, by written contract, employed plaintiff as its Chief Engineer;

(3) That shortly after the incorporation of the district there was duly and regularly levied a uniform tax of 50 cents per acre upon each acre of land within the district for the purposes mentioned in Section 10752, R. S. '29; that before the beginning of this suit, all of said tax (with all interest and penalties thereon) was collected and paid to the district, and all of the monies so collected were expended and paid for the purposes for which said tax was levied; and at the time each of the warrants in suit was issued, and when the same were severally presented for payment there was not sufficient money to pay any of said warrants, nor since said time has there been any money set aside for the payment thereof, nor is there now any money to pay the same;

(4) That pursuant to contract, plaintiff prepared plans and specifications and a plan for reclamation, and made the necessary surveys for the works, ditches, and embankments intended to drain and reclaim ▪▪▪ the wet and overflowed lands in said district, which were approved by the Board of Supervisors, and that plaintiff performed all of the services which were required to be performed by his contract prior to the beginning of the construction and work of reclamation, and that the warrants sued on were issued to him for his said services; that in addition to the warrants sued on, plaintiff was paid for his said services by three warrants, two for $2,000.00 each, and one for $1,000.00; one of said $2,000.00 warrants has been paid by the district and the other two have not been paid;

(5) That the Circuit Court of Holt County, from the report of the commissioners appointed to assess benefits and damages, found the estimated cost of the proposed work and improvements to be less than the benefits assessed, and accordingly, on November 19, 1928, approved and confirmed said report.

(6) That the United States of America by purchase and condemnation proceedings subsequent to the confirmation and approval of said report of said commissioners acquired title to approximately 7,675.247 acres of land lying in a body in said district for the purpose of establishing and has established a Government Game Refuge, and built permanent dams, dikes, ditches and spillways and other works on said land and collecting the water on and flowing on to said land so that practically all of said lands so acquired by it are covered with water and are unfit for cultivation or for any other purpose other than a game refuge, by reason whereof, the plan of reclamation as adopted and approved by the court was destroyed and made impossible of construction and operation; that after deducting the benefits assessed against the lands so acquired by the Government of the United States from the total benefits assessed, the costs of construction of works and improvement as set forth in the plans for reclamation materially exceed the benefits.

(7) That no contract for construction of said works of reclamation pursuant to said plans and specifications nor any other plans or specifications was ever let or was any work of any reclamation ever begun nor were any bonds ever issued to pay the costs thereof; that said district has not been dissolved, nor has its Board of Supervisors nor any of the landowners taken any action to dissolve the same.

(8) That plaintiff is the owner and holder of all of the warrants in suit, and that the same are wholly unpaid; that they were severally presented for payment, and payment refused for ·lack of sufficient funds, which fact was duly endorsed upon the back of each of said warrants, as alleged.

The testimony of the President of the Board of Supervisors was to the effect that he was familiar with the financial condition of the district and that as far as he could determine "the district has no money or property; when the records of the former Secretary-Treasurer were turned over to the Board it showed no property or money in the bank belonging to the Board;" that it has no money in the bank or on hand, or machinery or property of any kind; that a considerable portion of the proposed ditches and drains were located in the area acquired by the Government for a Game Refuge, so that the district's plan, for reclamation was destroyed and made impossible of being carried out.

Respondents seek to sustain the judgment on the sole ground that the warrants were unauthorized and void because issued in payment of debts which, by law, were payable out of a particular fund that had been previously exhausted, and which the district had no power to replenish; that is, it is contended that the district having levied the maximum uniform tax of fifty cents per acre upon all lands within the district, as specified in Section 10752, R. S. '29 (Section 12333, R. S. '39), Sec. 10752, Mo. St. Ann., p. 3478, and the fund created

thereby having been expended for purposes authorized by said section, other than those for which the warrants in suit were issued, the power of the district to levy a tax for the services in question was exhausted, and it is without power to levy any additional tax to pay for said services.

The relevant portions of the statute, supra, together with like portions of Section 10781, R. S. '29, Sec. 10781, Mo. St. Ann., p. 3506 [Now Section 12362, R. S. '39], which has a bearing on the case, are set out on the left side of parallel columns below. On the right side will be found counterparts of these sections which appeared in what was popularly known as the Ralph Sewer Law [Chapter 65, R. S. '29, Laws 1927, pp. 439-465; Repealed, with saving clause, Laws 1931, p. 355, as amended, Laws 1933-34, Ex. Sess., p. 117.]

Sec. 10752, R. S. '29 [Sec. 12333, R. S. '39, Sec. 10752, Mo. St. Ann., p. 3478]: "The board of supervisors of any drainage district organized under the provisions of this article shall as soon as elected and qualified, levy a uniform tax of not more than fifty cents per acre upon each acre of land within such district, as defined by the articles of association, to be used for the purpose of paying expenses incurred or to be incurred in organizing said district, making surveys of the same and assessing benefits and damages and to pay other expenses necessary to be incurred before said board shall be empowered by subsequent provisions of this article to provide funds to pay the total cost of works and improvements of the district. . . . In case the sum received from such assessment exceeds the total cost of items for which the same has been levied, the surplus shall be placed in the general fund of the district and used to pay cost of construc-

Sec. 11037, R. S. '29 [Sec. 11037, Mo. St. Ann., p. 7405]: "The board of supervisors of any sewerage district organized under the provisions of this chapter may, as soon as appointed and qualified, levy a uniform tax of not more than ten cents per square of one hundred square feet upon all the lands within such district, to be used for the purpose of paying expenses incurred and to be incurred in organizing the district, in making surveys of the same, in assessing benefits and damages, and in paying other expenses necessary to be incurred prior to the time when the said board shall be empowered by subsequent provisions of this chapter to provide funds with which to pay the total cost of works and improvements of the district. . . . In case the sum received from such assessment exceeds the total cost of items for which the same has been levied, the surplus shall be placed in the general fund of the district, or used to pay cost of construction: *Provided,* that if the

tion: *Provided,* that if the corporation of the district be dissolved, as provided for in a subsequent section of this article, the amount of surplus, if there be any, shall be prorated and refunded to the landowners paying such uniform tax.''

Section 10781, R. S. '29 [Section 12362, R. S. '39, Sec. 10781, Mo. St. Ann., p. 3506]: ''If, after determining the objections made to the commissioners' report, the court shall find that the estimated costs of works and improvements as reported by the board of commissioners, or as amended by the court, exceed the estimated benefits, the court shall then render its decree, declaring the incorporation of the district to be dissolved as soon as all costs incurred, which shall include court costs and all obligations and expenses incurred in behalf of the district by the board of supervisors shall have been paid, and if the uniform tax levied under the provisions of section 10752 of this article be found insufficient to pay all such costs, the board of supervisors shall make such additional uniform tax levies as will be necessary to pay such deficiency. . . .''

corporation of the district be dissolved, as provided for herein, the amount of the surplus, if any, shall be prorated and refunded to the landowners paying the same.''

Section 11062, R. S. '29 [Sec. 11062, Mo. St. Ann., p. 7424]: ''If after determining the objections made to the commissioners' report, the court shall find that the estimated costs of works and improvements as reported by the board of commissioners, or as amended by the court exceed the estimated benefits, the court shall then render its decree declaring the incorporation of the district to be dissolved as soon as all costs incurred, which shall include court costs and all obligations and expenses incurred in behalf of the district by the board of supervisors, shall have been paid, and if the uniform tax levied under the provisions of this chapter be found insufficient to pay all such costs, the board of supervisors shall make such additional uniform tax levies as will be necessary to pay such deficiency. . . .''

The foregoing sections in reference to sewer districts were construed in State ex rel. Hotchkiss v. Lemay Ferry District, 338 Mo. 653, 92 S. W. (2d) 704, and of them the court en banc said that when considered separately they seem to be in hopeless conflict because a literal construction of the latter would destroy the limitations of the former, but that said sections could be read and construed together and both given effect. And so it was held, by a divided court, that Section 11037 fixes the maximum levy which can be made for the purpose of paying preliminary expenses incurred and to be incurred at ten cents per one hundred square feet (under

the drainage district statute with which we are concerned the figure is fifty cents per acre), but that it does not require that the maximum of ten cents per square be levied in the first instance. Section 11062 was held to be applicable only in those instances where the district, in the first instance, levies less than the maximum rate specified, but incurs preliminary expenses in excess of that levy, and in such event, the district may make additional levies within the limit authorized to pay deficiencies within, but not in excess of, such authorized limit. Moreover, it was held in that case that obligations for preliminary expenses in excess of the authorized maximum levy specified are not lawfully incurred obligations. If that case is to be followed, it would seem clear that the judgment should be affirmed, because the statutes involved are so nearly identical as to require the same construction. The writer concurred in the majority opinion in the Lemay Ferry Sewer District case, but, upon re-examination of the question, is convinced that the interpretation there given the statute is erroneous and untenable, and should be overruled for the reasons set forth in the dissenting opinion of ELLISON, J. All of the governing provisions of the former sewer district act were the same as the provisions of the drainage district act under which defendant district was incorporated, so what was said in the dissenting opinion of ELLISON, J., with particular reference to Sections 11037 and 11062, R. S. '29, applies with like force and effect to the sections here under scrutiny, so his dissenting opinion, in part, is adopted as the writer's, as follows:

"It will be remembered that chapter 65, R. S. Mo. 1929, containing 41 sections, provided for the incorporation of certain sewer districts by decree of the circuit court. Special benefit assessments were to be levied upon all the land in the district to pay the cost of constructing the sewer improvements or to retire bonds issued for that purpose. But, before that stage of the project had been reached, many steps necessarily had to be taken and the district financially obligated therefor. First came the proceedings to obtain a decree of incorporation, which the landowners could resist. Then supervisors and a chief engineer were appointed. Surveys were required to be made to obtain data for a sewer plan, which, of course, had to be formulated. Real estate titles had to be examined to ascertain who were the owners of the land to be assessed. Next, the value of all the land in the district was to be assessed by commissioners and a special benefit assessment levied against each tract according to the benefits received from the improvement. The landowners were permitted to file exceptions contesting these assessments in the circuit court, and expensive court proceedings usually followed. When all this had been done, if the aggregate assessed benefits approved by the court exceeded the estimated cost of construction, the project was to proceed; if the benefits were less than the cost of construction, the project was to be

abandoned and the corporation dissolved. All these successive steps, entailing substantial financial commitments, had to be taken before it could be known whether the project would and could be consummated; and before any of the special benefit assessment taxes could be collected (if at all).

"To provide for these preliminary expenses section 11037 (Mo. St. Ann., sec. 11037, p. 7405) was enacted, as follows: 'The board of supervisors of any sewerage district organized under the provisions of this chapter may, as soon as appointed and qualified, levy a uniform tax of not more than ten cents per square of one hundred square feet upon all the lands within such district, to be used for the purpose of paying expenses incurred and to be incurred in organizing the district, in making surveys of the same, in assessing benefits and damages, and in paying other expenses necessary to be incurred prior to the time when the said board shall be empowered by subsequent provisions of this chapter to provide funds with which to pay the total cost of works and improvements of the district. . . . In case the sum received ▆▆▆▆ from such assessment exceeds the total cost of items for which the same has been levied, the surplus shall be placed in the general fund of the district or used to pay cost of construction: Provided, that if the corporation of the district be dissolved, as provided for herein, the amount of the surplus, if any, shall be prorated and refunded to the landowners paying the same.'

"The principal opinion, as will be seen by reference thereto, stresses certain words in the section, and by so doing construes it as if to read: The board of supervisors may levy not more than 10 cents per square of 100 square feet in the aggregate for the purpose of paying expenses incurred and to be incurred from the organization of the district to the time when the construction of the sewer is authorized or the district is dissolved; and the funds used in paying said expenses can come from no other source than said uniform tax. But in so holding the opinion ignores what I think is the controlling provision of the section, in view of the whole scheme of the chapter. As already pointed out, a considerable preliminary expense, varying in amount with the situation in the particular district, must be incurred *in advance*. This being true, section 11037 by a qualifying phrase at the beginning of the section provides that the board of supervisors '*may, as soon as appointed and qualified,*' levy and collect said uniform tax of 10 cents per square of 100 square feet for the purpose of paying these expenses. (All italics in quotations from the statute are mine.)

"But nowhere does the section provide, as I read it, that the preliminary expenses shall not exceed the 10-cent levy. It merely says the initial flat levy shall not exceed 10 cents per square, and that it is to be used in paying preliminary expenses incurred or to be incurred— it does not say *the* preliminary expenses or *all* preliminary expenses.

And it further provides the levy may be made to pay expenses incurred 'prior to the time when the said board shall be empowered by subsequent provisions of this chapter to provide funds with which to pay *the total cost* of works and improvement of the district.' Certainly the preliminary expenses for organization, surveys, title work, office rent, salaries, fees, court costs, attorney fees, and the like are a part of the total cost of construction where the project is consummated and the sewers built. [19 C. J., sec. 217, p. 719.] Furthermore, toward the end the section provides that, *'in case'* the sum received from the uniform levy exceeds the preliminary expenses, the surplus shall be used by the district or be refunded to landowners if the district be dissolved. By implication this contemplates the possibility of the opposite contingency, namely, that the proceeds from the levy may *not* exceed the preliminary expenses, or, in other words, that the latter may overrun the former. It can hardly be thought the Legislature had in mind nothing but that the amount thus raised in advance to pay these uncertain preliminary expenses would either only exceed them or exactly equal them, and that it could not underrun them.

"Further, section 11040 (Mo. St. Ann., sec. 11040, p. 7407) provides that, when the commissioners appointed to assess the benefits accruing to the land in the district as a basis for the special benefit assessments prepare their report, they shall make an estimate of the cost of the sewer improvements which shall include an estimate of 'the probable expense of organization and administration.' Under section 11042 (Mo. St. Ann., sec. 11042, p. 7409) this estimate is to be used by the court in determining whether 'the estimated cost of constructing the improvement contemplated in "the sewer plan" is less than the benefits assessed.' In other words, the preliminary expenses are to be treated as a part of the whole cost of construction. And section 11044 (Mo. St. Ann., sec. 11044, p. 7411), which provides for the levy of special taxes against the benefit assessments, says the levy shall be 'of such portion of said benefits . . . as may be found necessary by the board of supervisors to pay the cost of the completion of the proposed works and improvements, as shown in the sewerage plan and in carrying out the objects of the district, plus ten per centum of said total amount for emergency.' The principal opinion holds these sections do not disclose a legislative intent that the special benefit assessments collected may be used to pay preliminary expenses when the uniform advance levy will not do it, and that the words 'cost of construction' and other similar expressions in the several sections refer to expenses incurred after the construction of the sewer is authorized, and exclude expenses incurred prior to that time. I submit the Legislature cannot be thought to have had the intention that any expense honestly and necessarily ▮▮▮ incurred within the benefit assessment, in building the sewer improvement in accordance with the sewer plan and in 'carrying out the objects of the district,'

should remain unpaid; and that, when section 11044 provides for the levy of special benefit taxes 'to pay the cost of the completion of the proposed works and improvements,' it means the cost of bringing them to completion.

"What good reason could the Legislature have had for desiring to provide that all preliminary expenses of the district should be paid only out of the 10-cent uniform advance levy? Why fix an arbitrary limit at that figure? We know these expenses may greatly vary. In a district composed of large tracts held by comparatively few owners, with a favorable terrain, the engineering work would be far simpler and the number of exceptions to benefit assessments, court trials, sewer lines, etc., would be relatively small. But in a district of large population and difficult terrain containing city and town streets, and sub-divisions and lots with many owners, the work and expense would be enormously increased. Did the Legislature mean to say no sewer district could be established when the area thereof was too small to provide a fund, derived from a 10-cent uniform tax levy, sufficient to meet the preliminary expenses no matter how valuable and thickly populated the area might be, and how great the benefits? No such limitation is apparent in the law. Plainly, the purpose in providing for an advance uniform levy of 10 cents on an area, not a benefit, basis was to furnish a working fund in the beginning which would be available as far as it would go until the benefits could be assessed and special taxes levied and collected.

"No doubt the section meant, if the project was carried out, no levy on an area basis in excess of 10 cents per square could be made to pay preliminary expenses, for in that case the benefit assessment later collected would be available to meet any deficiency. That is reasonable. Taxation on an area basis is not as equitable as taxation on a benefit basis. Equal areas of land in a district might vary greatly in value and in the amount of benefits received. The initial uniform tax was simply an expedient made necessary because many preliminary expenses had to be incurred and paid before the machinery can be put in motion to raise funds on a benefit basis. But that is vastly different from saying, as the principal opinion does say that. *no* preliminary expenses could be incurred except within the uniform tax of 10 cents per square and that no part of the funds produced by the benefit assessment could be used for that purpose.

"It is argued the construction I am contending for would have permitted the board of supervisors to incur preliminary expenses without limit; but such is not the fact. As already pointed out, by force of sections 11042 and 11044, the estimated preliminary expenses were included in estimating the cost of construction, and the whole was required to be within the total benefit assessment. The work could not go on without these preliminary outlays—if they were reasonable and necessary, as is conceded for the purposes of this case. The landowners lost nothing.

"The foregoing discussion about whether preliminary expenses could be paid out of benefit assessments if the advance uniform levy of 10 cents per square under section 11037 proved inadequate is really beside the point on the precise question presented by the record. It presupposes authorization and construction of the sewer improvement, whereas in this case the project was abandoned. But it has its bearing. For, if the law permitted the preliminary expenses to exceed the 10-cent uniform tax levy when the project went forward, and the excess could be paid out of the fund raised by special assessment, the same commitments also could be made, even though the project was later abandoned, because the supervisors could not tell at the time the expenses were incurred which eventuality will follow. Turning now to that precise question:

"Section 11037 expressly provided only for contingencies where the preliminary expenses were *less* than the amount of the uniform tax levy. It was said that in such event, if the sewer project were carried out, the surplus should go into the general fund or be used to pay costs of construction; and, if the district were dissolved, it should be refunded to the landowners pro rata. I have endeavored to show in the preceding paragraphs that the section by plain implication, in connection with other sections, further provided that, if the preliminary expenses *exceeded* the amount produced by the uniform tax levy and the project was prosecuted to completion, the difference could be paid out of the benefit ▆▆▆ assessment. But it was left to section 11062 (Mo. St. Ann., sec. 11062, p. 7424) to declare plainly what should be done if the preliminary expenses exceeded the uniform tax and the district was dissolved. That section said that, if the court found the estimated cost of construction would exceed the estimated benefits, 'the court shall then render its decree declaring the incorporation of the district to be dissolved as soon as all costs incurred, which shall include court costs and all obligations and expenses incurred in behalf of the district by the board of supervisors, shall have been paid, and if the uniform tax levied under the provisions of this chapter be found insufficient to pay all such costs, the board of supervisors shall make such additional uniform tax levies as will be necessary to pay such deficiency.'

"What could be clearer? As a condition precedent to dissolution, *all costs incurred,* including court costs and *all obligations and expenses incurred in behalf of the district by the board of supervisors,* must be paid. And not only that: The section says, *if the uniform tax levied* under the provisions of the chapter *be found insufficient to pay all such costs,* the board of supervisors *shall make such additional uniform tax levies as will be necessary to pay such deficiency.* It must be kept in mind that this section 11062 deals with a different situation from that contemplated by section 11037. The latter faced the prospect that the sewer improvement might and probably would

be constructed, and benefit assessments might and probably would be levied. But section 11062 provides alone for situations where the district is to be dissolved and no benefit assessments can be collected. There is no alternative except to require the levy of additional uniform taxes sufficient to liquidate the debts of the district.

"I submit that the principal opinion nullifies the unequivocal provisions of section 11062, which can only mean what they plainly say. The reasoning by which this is done starts with the false premise that section 11037, supra, forbids altogether the levy of a uniform tax or taxes exceeding 10 cents per square in the aggregate. It is then declared that section 11062, above, conflicts with section 11037 as thus interpreted, and to harmonize that conflict the opinion construes section 11062 as meaning the board of supervisors may make the additional uniform levies directed therein *up to a maximum* of 10 cents per square of 100 square feet *if* the uniform levy made in the beginning was below that figure. This does violence to both clauses of the quoted part of section 11062. The statute says without qualification that *all* costs, obligations, and expenses of the district shall be paid; the opinion says only so much of them shall be paid as can be satisfied out of a levy of 10 cents per square in the aggregate. The statute says further without qualification that, if the uniform levy made in advance. (which can be ten cents under section 11037) proves insufficient to satisfy all the obligations of the district, additional uniform levies may be made to pay the deficiency; the opinion says, if the original uniform levy was *less than 10 cents,* the deficiency may be made up so far as an additional levy up to a maximum of 10 cents in the aggregate will do it. The statute forbids dissolution of the district until its debts are paid; the opinion permits it to pass out of existence leaving creditors unsatisfied.

"Now reverting to the proper construction of section 11037, as applied to situations where the district is dissolved: The understanding of the bench and bar ever since chapter 65 was enacted has been that it meant only the *advance* uniform tax levied by the board of supervisors for preliminary expenses should not exceed 10 cents per square; not that a uniform tax in excess of that figure *never* could be levied. In State ex rel. Becker v. Wellston Sewer District, 332 Mo. 547, 58 S. W. (2d) 988, 990, while the point was not up for decision, the facts were that an original uniform tax of 10 cents per square and a later similar tax of 8 cents had been levied to pay preliminary expenses of a sewer district dissolved by the 1931 law. This court in banc said: 'To defray these preliminary expenses the board of supervisors was authorized to levy a uniform initial tax of 10 cents per square of 100 square feet, and a further uniform tax if necessary for that purpose.' In State ex rel. and to Use of Stoecker v. Jennings Sewer Dist., 333 Mo. 900, 906, 63 S. W. (2d) 133, 135, though it was contended a 10-cent uniform tax would be insufficient to pay

all outstanding warrants of a dissolved sewer district for preliminary expenses, this court held 'the board of supervisors ought to levy a uniform tax upon all of the lands of the district in order that funds may be obtained for the payment of all lawful claims existing against the district.' And as pointed out in the principal opinion, in passing on practically identical drainage statutes, the Kansas City Court of Appeals said in Macon County Levee District No. 1 v. Goodson, 224 Mo. App. 131, 133, 22 S. W. (2d) 651, 652, that 'the statutory authority to levy the additional tax is quite plain.' The substance of the two sections was set out in the opinion in connection with and preceding this statement.

"But concede for the purpose of discussion that section 11037, either standing alone or in connection with sections 11040, 11042, and 11044, does not clearly bear the construction I have put upon it; and grant that it is ambiguous or equivocal. The principal opinion concedes that section 11062, which authorizes the levy of additional uniform taxes to pay preliminary expenses on dissolution, is clear; and it appears later in the chapter and provides specially what shall be done about discharging the obligations of sewer districts when they are dissolved because the estimated cost exceeds the benefits. The rules of statutory construction applying in such a situation are as follows:

" 'The law is well settled that, where there is an irreconcilable conflict between two different parts of the same act, as a rule the last in order of position will control, unless there is some special reason for holding to the contrary.' [State ex rel. Greene County v. Gideon, 273 Mo. 79, 87, 199 S. W. 948, 949.]

" 'Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part the particular provisions must govern, unless the statute as a whole clearly shows the contrary intention and they must be given effect notwithstanding the general provision is broad enough to include the subject to which the particular provisions relate.' [59 C. J., sec. 596, p. 1000.]

" 'Where one part of the statute is susceptible of two constructions, and the language of another part is clear and definite, and is consistent with one of such constructions, and opposed to the other, that construction must be adopted which will render all clauses harmonious.' [59 C. J., sec. 597, p. 1103.] "

 In this view of the matter, further discussion is unnecessary. But there are some other things which should be mentioned. No claim or pretense is made that the warrants in suit do not represent necessary services actually rendered under a valid contract (with the Board of Supervisors whose membership was elected by the landowners themselves), and at reasonable and fair prices. Without such services the district could not have adopted its plan of reclamation, nor taken any of the steps essential to carry into effect its cor-

porate purposes. The district received the full benefit of plaintiff's services. The fact that it later developed that the project could not be successfully carried out as originally planned does not affect plaintiff's right to recover on warrants issued in good faith in payment of his services.

The district has not taken any steps looking toward corporate dissolution, which may be significant. For, in addition to the section providing for dissolution upon a finding that the damages exceed the benefits, discussed in the foregoing dissenting opinion, there are other statutory plans therefor, one of which (by amendments in 1935 and 1939) provides for dissolution upon petition of the owners of a majority of the acreage of a district, after the adoption of a plan for reclamation, ''at any time before the bonds are issued and negotiated''—the very situation in the case at bar. But as in the other section, it also imposes, as a condition precedent, the provision that ''all warrants issued and unpaid by it and the amount of the debts and other obligations'' be first ascertained and paid, and authorizes the supervisors to levy and collect a uniform acreage tax for that purpose. [Sec. 12361, R. S. '39, Sec. 10780, Mo. St. Ann., p. 3505, as amended, Laws 1935, p. 228, and Laws 1939, p. 362.] This policy of liquidating indebtedness permeates the whole statute and is declared in the several sections relating to dissolution, as has been seen.

From what has been said it follows that plaintiff is entitled to judgment against the district, and plaintiff having abandoned any theory of liability on the part of defendants other than the district, the judgment in their favor should be, and it is, affirmed; but as to the corporate defendant, Missouri Valley Drainage District, it is reversed, and the cause remanded with directions to enter judgment for plaintiff for the amount of the several warrants sued on, with interest, as prayed.

PER CURIAM:—The foregoing opinion by LEEDY, J., in Division Two is adopted as the opinion of the Court en Banc. *Clark, Hays* and *Ellison, JJ.,* concur; *Tipton* and *Douglas, JJ.,* and *Gantt, C. J.,* dissent.

### ON MOTION FOR REHEARING.

LEEDY, J.—This cause was transferred to the court en banc upon the dissent of one of the judges of Division II, where it had been heard and determined. Upon reargument in banc the divisional opinion was adopted, in consequence of which certain contentions not made in division, but appearing for the first time in respondents' supplemental brief in banc, were not expressly ruled. This omission constitutes the basis of the motion for re-hearing filed by the drainage district.

■ The matter of first insistence is that the construction given the several sections of the sewer district act in State ex rel. Hotchkiss v. Lemay Sewer District, supra, (decided in 1936) is binding on us in construing the sections of the *drainage* act in question, because, it is said, such construction has become a part of the *latter* sections, the Legislature having allowed them to remain in force since said decision. It is true three legislative sessions have passed (one a revision session), and the Legislature has not amended or changed the *drainage* act sections. The rule of statutory construction invoked is "where a court of last resort construes a statute and that statute is afterwards re-enaced, or continued in force, without any change in its terms, it is presumed that the Legislature adopted the construction given to it by the court." [Handlin v. Morgan County, 57 Mo. 114.] It is a well-settled rule with which we have no quarrel. Under it, this court has on several occasions declined to re-examine earlier constructions of statutes, of which Handlin v. Morgan County, supra, cited and relied on by the district, is an example. In that case nineteen years had elapsed before the previous decision was called in question. And in Ex parte Carey, 306 Mo. 287, 267 S. W. 806, likewise relied on by the district, the legislative acquiescence had been over a period of thirty years. [See, also, Schawacker v. McLaughlin, 139 Mo. 339, 40 S. W. 935; Easton v. Courtwright, 84 Mo. 27; State ex inf. Gentry v. Meeker, 317 Mo. 719, 296 S. W. 411; State ex rel. Steed v. Nolte, 345 Mo. 1103, 138 S. W. (2d) 1016.] We think the rule not applicable, if for no other reason than that the statutes construed in the Hotchkiss case, supra, stood repealed (with a saving clause) at the very time of that decision; hence there was no occasion for further legislative concern over, or action on its part with respect to the construction given said sections.

Respondent has cited no cases, nor have we been able to find any, extending the effect of this rule to the mere continuation, without change in terms, of an *earlier* enacted analogous statute. Moreover, until the opinion in this case was adopted, this court has not held that the drainage and sewer district acts were so closely analogous as to require the same interpretation, so that it cannot be said that the "public and official construction of the statute was widely known," thus bringing it within Schawacker v. McLaughlin, supra.

The services in question had been performed, and the warrants issued long prior to the Hotchkiss decision. The Kansas City Court of Appeals in Macon County Levee District v. Goodson, 224 Mo. App. 131, 22 S. W. 651, (decided in 1929) construed practically identical sections of the *levee* district act as authorizing the additional levy; the court, in an opinion by Commissioner BARNETT, after reciting the substance of the sections, saying, "The statutory authority to levy the additional tax is quite plain." The Kansas City Court of Appeals is a court of last resort, and, acting within its jurisdiction and not in

violation of our decisions, it determines litigated issues as its judgment dictates with as great freedom as this court. [State ex rel. Hoyt v. Shain, 338 Mo. 1208, 93 S. W. (2d) 992. See, also, State ex rel. v. Ellison, 269 Mo. 151, 190 S. W. 274.] That it has jurisdiction to construe statutes will not be doubted. [Mellon v. Stockton et al., 326 Mo. 129, 30 S. W. (2d) 974; Kribs v. United Order of Foresters (Mo.), 222 S. W. 1005.] Three legislative sessions intervened between the date of the decision in the Macon County case and the time of the adoption of the Hotchkiss case, so that, if the district is correct in its contention, ▮▮▮▮ then it would seem to follow that this court was without authority to overrule the Macon County case, and give the analogous sewer district statutes a different construction, and the Hotchkiss case should be overruled for that reason, if for no other. But our decision does not rest on this ground, as pointed out above.

▮ Defendant says we "overlooked the history of drainage legislation in this state, and particularly Sec. 5519, R. S. '09, as amended by Laws 1911, p. 213, which conclusively shows that Sec. 10759, R. S. '29, was not intended to authorize a benefit tax to pay preliminary costs, and that Sec. 10752, R. S. '29 was intended to limit the tax to pay preliminary expenses to fifty cents per acre." The argument proceeds upon the premise that until 1913 "there was but *one* compulsory tax, a *benefit* tax, which the benefited landowners were required to pay in proportion to benefits and which, by the express terms of the statute, *included organization and administration* expenses as well as construction and maintenance costs. [Sec. 6528, R. S. '89; Sec. 8262, R. S. '99; Sec. 5519, R. S. '09, as amended by Laws, 1911, p. 213, so as to provide for a separate maintenance tax] ; that in 1913 the entire drainage act was repealed, and another substituted, whereby the former scheme of a single *benefit* tax to pay preliminary and administration expenses as well as construction costs was changed; that said change was effected through the enactment of what are now Secs. 10752, 10759 and 10789, in that a separate compulsory *area* tax for the purpose of paying preliminary or organization expenses was provided by Sec. 10752, and a separate compulsory *benefit* tax "to pay the costs of the completion of the proposed works . . . as shown in said 'plan for reclamation' and carrying out the objects of said district, and plus ten per cent of said total amount for emergencies" was provided by Sec. 10759, and a separate compulsory annual tax for the purpose of paying maintenance and administration expenses was provided under Sec. 10789; that the principal opinion, by judicial legislation, puts back into said Sec. 10759 the provisions of former Sec. 8262, R. S. '99 [Sec. 5519, R. S. '09, as amended by Laws of 1911] which the Legislature took out by repealing those sections, and enacted Secs. 10752 and 10759.

But defendant, in its argument, ignores the fact that prior to 1913 and while Sec. 5519, R. S. '09, was still in force and effect, there

was another section of the same article, Sec. 5538, R. S. '09, which expressly authorized the supervisors to levy "upon each acre of land in the district, not to exceed twenty-five cents per acre, *as a level rate,* to be used for purpose of paying expenses of organization, for topographical and other surveys, for plans of drainage, for expenses of assessing benefits and damages and other incidental expenses which may be necessary before entering upon the main work of drainage." [Laws 1909, p. 628.] So it will be seen that Sec. 10752 did not have its genesis in the act of 1913, as defendant asserts, and the co-existence of Secs. 5538 and 5519, R. S. '09 is a complete answer to the proposition advanced.

We have examined the other grounds of the motion, and think they are sufficiently answered by the opinion itself. The motion for rehearing is overruled.