Chariton River Drainage District of Adair County, Missouri, a Corporation, Defendant in Error, v. Minta Latham, Plaintiff in Error.—170 S. W. (2d) 433.

Kansas City Court of Appeals.   February 1, 1943.

*E. M. Jayne* for plaintiff in error.

*Murrell & Murrell, Clifford B. Kimberly* and *Milligan, Kimberly & Deacy* for defendant in error.

CAVE, J.—This cause reaches this court on a writ of error sued out to review a judgment of the Circuit Court of Adair County, Missouri. In the trial court, the drainage district was plaintiff and Minta Latham was defendant, and for convenience they will be referred to in that manner.

Plaintiff is a drainage district organized in 1928 by decree of Circuit Court of Adair County, under the provisions of what is now Article 1, Chapter 79, Revised Statutes Missouri 1939. Following the decree of incorporation, a uniform organization tax of 50c per acre was levied upon all of the lands in the district in accordance with what is now Section 12333, Revised Statutes 1939. Shortly after the organization of the district, the Board of Supervisors by written contracts employed an engineering firm and a firm of attorneys. A plan of reclamation was prepared and adopted and commissioners to assess benefits and damages were appointed. These commissioners did not make a report to the circuit court until the 20th day of January, 1938, almost ten years after their appointment. Their report disclosed that the damages exceeded the amount of benefits. Certain landowners within the district, including this defendant, filed exceptions to that report and after a hearing, the court, on September 8, 1938, ordered that the district be dissolved ''as soon as all costs and expenses incurred, including court costs and all other obligations and expenses incurred in behalf of the district by the Board of Supervisors shall have been paid . . . .''. It was further ordered that the Board of Supervisors, naming them, ''forthwith meet and ascertain the total amount of indebtedness of said corporation, including court costs and other obligations and expenses, and if there is not now sufficient money in the treasury of said corporation to discharge the same, that said Board of Supervisors shall, and is hereby ordered to make such additional uniform tax levy as will be necessary to pay such deficiency, if any.''. [Sec. 12362, R. S. 1939.]

Thereafter, the Board of Supervisors made, or as defendant contends, attempted to make, a levy of an additional sum of $1.00 per acre on all of the land of the district to pay the debts of the district. There was something in excess of 8600 acres in the district, and this defendant was the owner of thirty-two acres, and is being sued on her tax bill for the $32 taxes, with interest and attorneys' fees. A trial was had before the court without the aid of a jury and resulted in a verdict for the plaintiff for the amount of the taxes, with interest and attorneys' fees.

Defendant relies upon a number of assignments of error, but after considering her original brief and reply brief, there seems to be two grounds upon which she relies in this court. They are: '' (1)

That the tax upon which this suit was brought was not levied to pay valid obligations of the district, for certain reasons noted later; (2) that any obligation of the district to the Board of Supervisors, the engineering company or the attorneys could not be the basis for a dissolution levy in addition to the fifty cent an acre organization levy under the circumstances in this case.''

The Board of Supervisors made a levy in the sum of $8650.94 as the amount required to pay the obligations and expenses incurred in behalf of the district by the Board of Supervisors. The principal items making up this total were $1000 to the supervisors, balance due the engineering firm, the attorneys, court costs, and certain small items.

Under her point one, defendant first contends that ''no valid obligation of the district existed in favor of the Board of Supervisors,'' and cites Section 12330, Revised Statutes Missouri 1939, which provides in part: ''The members of the Board shall receive for attending to the business for and on behalf of said district actual transportation expenses, which shall be audited by the board before payment. Said board shall receive no compensation for their services unless the landowners at the annual meeting shall determine to pay a compensation which in no event shall exceed $5 per day for time actually engaged in work for the district.'' There was no evidence that the landowners ever authorized the payment of any compensation to the board and it does not appear from the evidence that the board ever audited or submitted any ''actual transportation expenses.'' Plaintiff's first answer to this contention is that ''the validity of the obligations for which the tax is levied is not subject to question as a matter of defense in this proceeding,'' and for authority cites the cases of State ex rel. McBride v. Sheetz, 214 S. W. 376, 279 Mo. 429; State ex rel. Roberts v. Eicher, 178 S. W. 171. The holding in Roberts v. Eicher is not controlling here, because in that case the court was discussing the question of the validity of bonds which had been issued to pay for the construction work, and held that whether the obligation for the construction was evidenced by valid bonds or not was no concern of the defendant, because the valid obligations for the construction must be paid for either in the form of bonds or as any other debt. In the Sheetz case, *supra*, all the court held was that ''the validity of the incorporation is not open to collateral attack in a suit for taxes.'' That is quite a different question from the one presented here. The levy in this case, if valid at all, must be made under Section 12362, *supra*, which provides in substance that if the uniform tax levy of 50c per acre be found insufficient to pay all costs looking to the dissolution of the district, then the Board of Supervisors may make an additional uniform levy to pay any such deficiency. The question confronting us is whether a taxpayer in a drainage district which has been ordered dissolved by the circuit court can question the validity of obligations allowed by the supervisors when they bring

suit on the tax bill which has been assessed to pay such obligations. Section 12330, *supra,* prohibits the burden of supervisors from receiving any compensation, except actual transportation expenses, unless the landowners at the annual meeting shall determine to pay compensation, which in no event shall exceed $5 per day for time actually engaged in work for the district. There is no evidence in the record, or claim made, that the landowners ever authorized any compensation for these supervisors and there is no evidence of any actual transportation expenses incurred or audited. Over the objection of the plaintiff, the secretary and treasurer of the district testified concerning certain figures on a paper which he held in his hand: "This is the copy that we used the day we ascertained the assessment. We estimated against this thing was wound up, we don't know where we are at—$1000 for the directors and their expense; $968.85 of accumulated court costs and to that add $750 balance due attorneys, and $3250 due Engineering Company, and then there was various small bills . . . The total amount that we figured that day was $5975.53." He further testified "the agreement with Jacoby Engineering Company was that we were to run this dollar an acre assessment and to pay all bills and they was to have the balance, that was the agreement. They was to have the first $3250 that was collected and then the balance after other bills were paid."

We conclude that the defendant can question the validity of the levy in this case on the ground that the debts undertaken to be paid by the supervisors from such levy are invalid debts. [State ex rel. Ross v. General American Life Insurance Co., 336 Mo. 829, 85 S. W. (2d) 68.] But plaintiff contends that since a *prima facie* case was made by the introduction of the tax records, then the burden was on the defendant to show the invalidity of the tax. That is true under the ruling in the last above-cited case, and we think defendant met that burden insofar as the $1000 allowed the supervisors. A careful reading of this record will disclose that it is undisputed that any "actual transportation expenses" were ever audited and allowed, and that the landowners at any annual meeting ever determined to pay the supervisors any sum, as specifically required by Section 12330, *supra.* Under the evidence in this case, the allowance by the supervisors of $1000 to themselves was invalid.

The other two specific debts questioned by defendant are the items allowed the engineering firm and the attorneys. We shall consider whether the defendant met the burden of proving the illegality of those two items.

The supervisors had statutory authority to employ the engineering firm and attorneys; Sections 12331-12351, Revised Statutes Missouri 1939. The evidence discloses that they were employed by written contracts and that they performed certain services for the district. After the order of dissolution was made by the circuit court, the super-

visors compromised the claims of the engineering firm and attorneys, which they had a right to do. Defendant assails such compromises on the ground they were not made in good faith. There is no substantial evidence in this record to support that contention. The engineering contract provided in substance that if the prosecution of the work should be halted or stopped at any time, there should be due it a fee or an amount proportional to the services rendered "which amount shall be agreed upon by and between both parties hereto." Defendant also seems to argue that the amount agreed to be paid the engineering firm is not in fact a compromise, but is almost the full amount called for by said contract. We cannot determine that matter, because the record does not disclose the estimated total cost of the completion of the project which must be taken into consideration in determining the total amount due the engineering firm if the project is completed.

Defendant next contends that the Board of Supervisors, the engineering firm and the attorneys are estopped to assert any valid obligation against the district, because, on December 22, 1928, the Board of Supervisors met at the office of the attorneys and rebated to certain landowners the original organization tax of 50c an acre, and that approximately an additional one-third of the original organization tax was not collected, and that the supervisors took no action to collect the same. This contention cannot be valid as against the engineering firm, beause there is no evidence that it had any knowledge of such action on the part of the board. With reference to the taxes which were not rebated, but were uncollected, the record fails to disclose whether such taxes could have been collected or not, or why they were not paid, or whether any effort was made on the part of the supervisors to collect the same. Under that state of the record, we would not be justified in holding that, after the order of dissolution had been made, a uniform levy could not be made under Section 12,362, *supra*. This conclusion is supported by State ex rel. Drainage District v. Thompson, 328 Mo. 728, 14 S. W. (2d) 941; State ex rel. Frazer v. Holt County, 135 Mo. 533; Diekroeger v. Jones, 151 S. W. (2d) 691.

Now with reference to the contention that the supervisors and the attorneys cannot make any claim against the district at this time because they voluntarily remitted the organization tax of fifty cents per acre made under Section 12333, *supra,* to various landowners. The minutes of the Board of Directors as of December 22, 1928, does disclose the following as having been adopted: "Motion was made and adopted that in the collection of the organization tax of 50c per acre that overflow lands of the various landowners be required to pay only this tax and that other lands in the District not subject to overflow the tax of 50c per acre should be remitted in accordance with the Report of the Engineers as to the number of acreage that is not sub-

ject to overflow." The record also discloses that the meeting at which this resolution was adopted was held at the offices of the attorneys for the district. There is no evidence that the attorneys advised or participated in the preparation of the resolution remitting the organization tax on certain lands and unless they did so, they would not be estopped to make a claim for the services because of such *remittitur*. It is possible the supervisors met at the offices of the attorneys without the attorneys knowing thereof or participating at such meeting or advising such action. Therefore, in the state of this record, it cannot be said that the attorneys are estopped to make claim for their services because of this fact. However, we do conclude that the supervisors are estopped to make a claim for their services because they voluntarily and illegally remitted the organization tax of 50c per acre on certain lands within the district. Section 12333, *supra*, which authorizes the levy of the uniform tax of not more than 50c per acre, provides that it shall be "upon each acre of land within such district." That language seems clear and we find nothing in the drainage district statute which authorizes the levying of the organization tax on land which is only overflowed. Neither do we find anything in such statutes authorizing the supervisors to voluntarily remit the payment of such organization tax by landowners owning land within the district. Plaintiff contends that because a prior tax is uncollectible, and new taxes must be levied to make up a deficiency, does not affect the uniformity of the new tax so levied; and that the supervisors have the right to compromise tax claims; but such cases have no application to the facts here. This was not a compromise; and there was no showing that the tax was uncollectible; it was a voluntary *remittitur* of the organization tax on certain acreage because such acreage was not subject to overflow, and not because such tax could not be collected.

It is also contended that estoppel against the supervisors, and possibly against the attorneys, would not apply because they are not parties to this suit, and cites the case of State ex rel. Frazer v. Holt County, *supra*, but the very basis of that decision was that the parties against whom estoppel was asserted "hadn't anything to do with the matter of the estimate, the assessment, the levy or collection of the tax." Just the reverse is true in this case, at least so far as the supervisors are concerned. For this additional reason, we hold that the supervisors cannot maintain their claim of $1000 against the district for services rendered; but we do not pass upon the question of whether the attorneys are estopped to make their claim because of the incompleteness of the record herein.

The defendant next contends that under the facts in this case, the supervisors could not levy a uniform tax to pay the obligations of the district under the order of dissolution by the circuit court in addition to the 50c an acre organization levy. There is no merit in this contention insofar as a levy is made to pay proper debts and obligations

of the district as a consequence of the order of dissolution. Such a levy is provided for by Section 12362, *supra*. We think this conclusion is clearly supported by a recent decision of the Supreme Court in the case of Jacoby v. Missouri Valley Drainage District, 163 S. W. (2d) 930; and this court passed directly on that point in the case of Macon County Levee District v. Goodson, 224 Mo. App. 131, 22 S. W. (2d) 651, which case is cited with approval by the Supreme Court in the Jacoby case, *supra*.

Defendant also contends that the court committed error in excluding certain testimony, but there is no merit in that contention because the evidence as offered was not the best evidence.

For the above reasons, we conclude that the levy made by the supervisors herein was unlawful. It follows that the judgment of the trial court should be reversed. It is so ordered. All concur.