### In the Matter of The LITTLE CHARITON DRAINAGE DISTRICT, CHARITON COUNTY, Missouri,

### W. H. Klingner, d/b/a W. H. Klingner & Associates, Intervenor-Appellant.

### No. KCD 30417.

Missouri Court of Appeals, Western District.

Aug. 4, 1980.

Michael L. Midyett, Keytesville (Rendlen, Rendlen & Ahrens, Hannibal, of counsel), for intervenor-appellant.

William O. Lee, Phillip Caldwell Brown, Hunter, Chamier, Lee & Elsberry, Moberly, for petitioners-respondents.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and KENNEDY, JJ.

WASSERSTROM, Chief Judge.

In proceedings to dissolve the Little Chariton Drainage District, William H. Klingner intervened and moved for an order requiring the Board of Supervisors of the District to levy assessments in order to pay engineering fees due him. From an order denying that motion, Klingner appeals. We reverse.

The District was organized on March 29, 1965. Its Board of Supervisors initially employed E. I. Meyer as its chief engineer for the purpose of making surveys and a report. Upon Meyer's death in 1966, Klingner succeeded him as chief engineer. The project was initiated with the expectation that the United States Corps of Engineers would participate and share a substantial part of the expense. However, the Federal Environmental Act adopted in 1969 required that a wildlife study be made, and the results of that study revealed that the plan of reclamation proposed by the Corps of Engineers would adversely affect the wildlife within the drainage district. These findings caused the Corps of Engineers to withdraw from further participation.

Thereupon, the Board of Supervisors published notices of a special meeting of landowners within the District to be held March 21, 1972. About 54 persons attended. The status of affairs was reported, including information that $50,000 had been incurred in expenses of which only about $30,000 had been taken care of, leaving a debt of $20,-000. The President of the Board further estimated a cost of approximately $1,000,-000 if the project was carried forward by

the landowners without assistance from the Corps of Engineers. The minutes of the meeting showed: "Upon call for a vote as to whether farmers were interested in doing the job there was a count vote of 45 with the balance not showing hands either way. In other words 83⅓% voted in favor of farmers straightening the creek."

Following that meeting, the Board entered into a new contract with Klingner, and he proceeded with preparing an amended Plan of Reclamation. That plan was presented to and approved by the Board and was filed in the Circuit Court on November 6, 1972. The Circuit Court duly appointed commissioners who studied the plan and on March 12, 1973, submitted their report finding that the benefits would exceed the costs and setting forth their findings as to benefit assessments.

In very short order, between April 2 to 6, 1973, 25 landowners filed exceptions to the Commissioners' Report. In addition, between April 26 and June 27, 1973, 257 landowners (who constituted approximately 64% of all the landowners) signed and caused to be filed petition for dissolution of the District.

The petition for dissolution was heard by Judge Green on July 5, 1973, and he ordered the District to be dissolved under Section 242.140, RSMo 1969.[1] He further ordered the Board of Supervisors, as provided in that section, to furnish the court with a statement of assets and liabilities of the District, so that the court might ascertain the need for the levy of a uniform tax to pay the proper obligations of the District. The financial report filed in response showed total liabilities of $69,189.15, of which $61,011.99 was the balance of indebtedness to Klingner. Cash balance on hand was $1,736.52, leaving a net deficit of $67,452.63.

Objections were then filed by landowners to any additional assessment to pay the District's indebtedness, Klingner intervened and was heard in behalf of making the

assessment. On July 28, 1975, Judge Green overruled the landowners' objections.

Thereupon the landowners appealed to this court. On August 8, 1977, this court handed down its opinion dismissing the landowners' appeal, on the ground that no assessment had yet been made and that therefore there was no final appealable judgment at that stage.

By the time the first appeal was so dismissed, Judge Green had retired and Judge Belt was designated as Special Judge to continue the proceedings. On September 1, 1977, Klingner filed before Judge Belt a motion for an order of levy. After hearing, Judge Belt overruled Klingner's motion on July 21, 1978. It is from that order that Klingner pursues the present appeal.

The sole issue for determination is whether the trial court should have ordered the levy of a special tax to pay the District's indebtedness. With respect to this issue, Klingner relies on Section 242.140, which provides:

"1. The incorporation of every drainage district, heretofore or hereafter incorporated under and by virtue of the provisions of sections 242.010 to 242.690, shall be dissolved if, at any time before bonds are issued and negotiated to construct the works and improvements as provided by the plan of reclamation adopted by its board of supervisors, the owners of a majority of the acres of land within said drainage district petition the circuit court, wherein said drainage district was incorporated, for a dissolution thereof; provided, that upon the filing of any such petition, said circuit court shall, before dissolving said corporation ascertain and determine the amount of money in the treasury of, or owing to, said corporation, and the amount of all warrants issued and unpaid by it and the amount of the debts and other obligations owing by it; * * * but, if said amount of money, in the treasury and owing to said corpora-

---

1. No amendment to Chapter 242, relevant to this case, has been made since 1965. Accordingly, all further statutory references in this opinion will be simply to chapter or section number.

tion, is not sufficient to pay and discharge said warrants, debts and other obligations then said circuit court shall order said board of supervisors to levy and collect a uniform tax upon each and every acre of land within said drainage district, sufficient in amount to pay said deficiency, and to thereupon pay the same."

The landowners, on the other hand, rely on Section 242.440 which provides as follows:

"Nothing in sections 242.010 to 242.690 shall authorize or be construed to authorize any uniform tax or any tax of any kind to pay any expenses mentioned or referred to in section 242.430, in addition to or in excess of the uniform tax of one dollar per acre upon each acre of land within such districts mentioned in said section 242.430."

■ Given a literal reading, these two sections pose a direct contradiction. However, these sections must, if possible, be construed so as to reach a reconciliation and make Chapter 242 a single, consistent and homogeneous whole. *State ex rel. Hotchkiss v. Lemay Ferry Sewer Dist. of St. Louis County*, 338 Mo. 653, 92 S.W.2d 704 (banc 1936) [overruled on other grounds by *Jacoby v. Missouri Valley Drainage Dist.*, 349 Mo. 818, 163 S.W.2d 930 (banc 1942)— hereinafter referred to as *Jacoby I*]; *State ex rel. McNary v. Stussie*, 518 S.W.2d 630 (Mo.banc 1974); *State ex rel. Ashcroft v. Union Elec. Co.*, 559 S.W.2d 216 (Mo.App. 1978).

A reconciliation of the two sections in question requires reference to the pattern and scheme of Chapter 242 as a whole. The general plan provides that whenever a majority of landowners in a wet area desire, they may organize a drainage district by petition to the circuit court. Section 242.-020. When that has been done and the court has declared the drainage district to be a public corporation, a Board of Supervisors is elected and Section 242.430 directs that they "shall as soon as elected and qualified, levy a uniform tax of not more than one dollar per acre upon each acre of land within such district * * * to be

used for the purpose of paying expenses * * * necessary to be incurred before said board shall be empowered by section 242.450 to provide funds to pay the total cost of works and improvements of the district."

When a plan of reclamation has been completed and approved by the Board, the plan is to be filed with the circuit court and the circuit court is then directed by Section 242.240 to appoint commissioners to appraise the lands and to assess benefits and damages. If the commissioners find that the benefits exceed the costs, they are to proceed to make findings as to benefit assessments. However, if the commissioners or the court find that the costs will exceed the benefits, then Section 242.290 provides that the court shall dissolve the district "as soon as all costs incurred, which shall include court costs and all obligations and expenses incurred in behalf of the district by the board of supervisors shall have been paid." This section further provides that if a uniform tax levy under Section 242.430 be found insufficient to cover all such costs, then "the board of supervisors shall make such additional uniform tax levies as will be necessary to pay such deficiency."

Once the plan of reclamation and the benefit assessments have been approved by the court, the Board of Supervisors is directed by Section 242.450 to levy a tax on all lands to which benefits have been assessed for the purpose of going forward with the proposed drainage project. Provision for further levies thereafter for special purposes are also provided by Sections 242.-470, 242.490 and 242.506.

■ A review of this Chapter discloses an underlying philosophy to provide a relatively small, easily applied, flat tax of $1.00 per acre during the preliminary stages of the District's life. Then, after a plan of reclamation has been formulated, it must be evaluated and benefit assessments recommended by commissioners, and it can be adopted only after judicial scrutiny. If the evaluation by the commissioners and the review by the court results in an adverse cost-benefit comparison, then the entire

project is to be abandoned and the District dissolved. Whether the District is dissolved for that reason (under Section 242.290) or upon petition of the landowners (under Section 242.140), the statutes require that the debts of the District be paid and that additional levies must be assessed if necessary to provide the funds for that payment. As stated in *Jacoby I, supra,* "This policy of liquidating indebtedness permeates the whole statute and is declared in the several sections relating to dissolution."

Considered in the context of this entire statutory scheme, Section 242.440 should be construed as intended to make clear that the $1.00 initial tax provided in Section 242.430 shall constitute an absolute maximum which the board can impose in the preliminary stages and collect without judicial supervision. It would be contrary to the entire legislative pattern to go beyond that and to hold, as the landowners insist, that Section 242.440 also constitutes a limitation upon the right and duty of the court to order such assessment as part of proceedings for final dissolution.

The litigation history of Chapter 242 supports the foregoing conclusion. The earliest case touching this subject was *Macon County Levee Dist. No. 1 v. Goodson,* 224 Mo. App. 131, 22 S.W.2d 651 (1929). In that case, after reviewing the plan of reclamation submitted, the circuit court found that the costs would exceed the benefits and ordered the District dissolved. The initial levy (which at that date was only 25¢ per acre) was insufficient to pay the indebtedness of the District, and the circuit court ordered an additional assessment which was levied by the Board of Supervisors. The defendant landowner refused to pay his assessment, and the Board filed suit to collect by foreclosing a lien on defendant's land. This court held with respect to the final assessment: "The statutory authority to levy the additional tax is quite plain."

The next case dealing with the subject was *State ex rel. Hotchkiss v. Lemay Ferry Sewer Dist. of St. Louis County, supra.* *Lemay* dealt with a sewer district rather than with a drainage district, but the court

in *Lemay* treated both sets of statutes as being comparable. The statutes at that time provided for a preliminary levy by sewer districts in the amount of 10¢ per 100 square feet and the question was whether upon liquidation of the sewer district, there was any authority to impose a tax in excess of the 10¢ in order to pay all outstanding obligations. A majority of the court in *Lemay* held that there was no such authority, expressly disapproving the decision in *Macon County Levee District No. 1 v. Goodson, supra.* This result was reached only over a very strong dissent.

Then, *Jacoby I, supra,* expressly overruled *Lemay* and adopted the dissenting opinion filed in the *Lemay* case. The facts in *Jacoby I* were that the United States Corps of Engineers withdrew from participation in a drainage project, and construction without that participation was impossible. Funds on hand received as a result of the initial flat acreage assessment had been exhausted, but no steps were taken toward dissolution of the District. The engineer employed by the District had received a warrant for his services and not receiving any payment thereon, he filed suit to collect. The trial court ruled for the defendant district, but the supreme court reversed and authorized judgment in favor of the plaintiff engineer.

The next case was *Chariton River Drainage Dist. v. Latham,* 237 Mo.App. 1010, 170 S.W.2d 433 (1943), in which a drainage district sued to collect an additional levy for the payment of its debts upon dissolution. It was held that the board had the power to levy a dissolution tax in addition to the organizational levy.

The next and final case in this series was *State ex rel. Jacoby v. Missouri Valley Drainage Dist. of Holt County,* 353 Mo. 1005, 185 S.W.2d 800 (banc 1945), referred to hereafter as *Jacoby II.* In this sequel to *Jacoby I,* the engineer sought a writ of mandamus to force the District to levy an assessment for the payment of his judgment. A majority of the court denied the writ, but only because there was no statutory provision for the additional levy in the

absence of proceedings for dissolution. In the concurring opinion of Judge Hyde, in which a majority of the court concurred, it was held: "If no new plan is adopted, it seems to me that the only method of payment left is by a uniform acreage tax upon dissolution. It seems to me that this is what the drainage article contemplates if an effective plan cannot be made and approved. * * * I do not think mandamus is now available." Two dissenting judges would have issued the mandamus.

The landowners here seek to escape the impact of the foregoing decisions by arguing that Section 242.440 was adopted by the legislature to overrule *Jacoby I* and reinstate *Lemay.* The basis for this argument rests upon chronology; *Jacoby I* was decided in 1942, and Section 242.440 was adopted by the legislature in 1943. The landowners' argument cannot be accepted for at least three reasons. First, the legislature did not disturb Sections 242.140 or 242.290. Both those sections as written specifically require the payment of accumulated obligations as a condition precedent to the dissolution of the district. It cannot be believed that the legislature intended to repeal these important provisions in such an off-hand manner and purely by implication. To declare such an intention to have existed would create the absurd result that a majority of the landowners might desire and petition for dissolution, but implementation would be impossible and the District would have to remain in limbo indefinitely because of inability of the court to order an assessment to pay indebtedness as required by Section 242.290.

Secondly, it should be noted that in the *Jacoby* situation, there had been no move toward dissolution. Assuming that the legislature was familiar with *Jacoby I,* it is entirely reasonable to believe that the legislature merely wanted to insure that there would be no tax assessed by the Board of Supervisors to pay the judgment unless and until dissolution proceedings began and could be subjected to judicial supervision.

Third and finally, *Jacoby II* is inconsistent with the landowners' contention. *Jaco-*

*by II* was decided in 1945, two years after the adoption of Section 242.440. Nevertheless, a majority of the court was of the opinion that an additional tax would be authorized once dissolution proceedings were instituted. The landowners in their brief try to deprive this portion of *Jacoby II* of significance, by saying that the indebtedness in *Jacoby* was incurred prior to 1943. However, the landowners fail to explain why the date when the obligation arose should be accorded such importance, and the Supreme Court opinions make no point of this factor. Whether incurred before or after the adoption of Section 242.440, the question of authority to tax is independent of the obligation itself. If the legislature had intended to cut off the power to tax on dissolution, that intention could have been given effect in *Jacoby II.* When the court failed to give the statute such an effect, it must be inferred that the court did not believe that the new Section 242.440 was intended to cut off the power to tax upon dissolution when necessary to pay accumulated indebtedness.

The landowners suggest that Sections 242.140 and 242.290 can be reconciled with Section 242.440 by holding that upon dissolution the Board of Supervisors may proceed to levy any portion of the $1.00 per acre which was not levied initially upon organization of the District. This suggestion has obviously been picked up from the majority opinion in *Lemay, supra.* One answer to this argument is that *Lemay* has long since been rejected. Moreover, *Lemay* involved the sewer district statutes which differ in one significant respect from the drainage district statutes. In the case of sewer districts, the statute provides that the initial acreage assessment "may" be assessed by the Board immediately upon organization of the District. Thus the full amount of authorized initial levy may or may not be assessed at the beginning. In contrast the drainage district statute, Section 242.430, provides that the initial $1.00 levy "shall" be levied by the Board immediately upon organization. Thus the drainage district statute leaves no residue of the $1.00 levy to be the subject of a subsequent taxation in the event of dissolution.

■ The result here reached finds additional support in further recognized canons of statutory construction. Thus, in the case of conflict the court is to give effect to the specific provision over a general provision. *Jacoby I, supra* at 163 S.W.2d l. c. 938. In this case, the provisions dealing with dissolution are the specific ones which should control over the general limitation in Section 242.440.

■ Additionally, statutes should be construed so as to avoid unjust, unreasonable or oppressive results. *State ex rel. Stern Bros. & Co. v. Stilley*, 337 S.W.2d 934 (Mo.1960); *Taylor v. McNeal*, 523 S.W.2d 148 (Mo.App.1975); *Brown v. Brewington*, 513 S.W.2d 768 (Mo.App.1974). In the present case, Klingner has provided extensive services to the District, as evidenced by the Plan of Reclamation filed in the District Court and which appears as an exhibit in the record on appeal. No contention has ever been made during the course of these proceedings that $61,011.99 is not a fair and reasonable charge for the services rendered. The landowners are entitled to terminate the life of the Drainage District if they so desire, but they should not be able to do so without paying the fair and reasonable expenses which have been incurred in their behalf by their duly elected Board. Chapter 242 should be interpreted so as to permit the payment for the services fully performed by Klingner in good faith.

The judgment is reversed and this cause is remanded with directions to the circuit court to order the Board of Supervisors to assess a uniform tax sufficient to pay outstanding obligations of the District.

All concur.