STATE OF MISSOURI, at the Relation of JAMES F. QUIGG, CHARLES A. STIX, ROYAL D. KERCHEVAL, MEREDITH C. JONES and EDWARD HOTCHKISS, Relators, v. LIQUIDATOR OF THE SEWER DISTRICTS OF ST. LOUIS COUNTY, MISSOURI; THE OVERLAND SEWER DISTRICT OF SAID COUNTY; COLLECTOR OF THE REVENUE IN AND FOR ST. LOUIS COUNTY, MISSOURI; RECORDER OF DEEDS IN AND FOR ST. LOUIS COUNTY, MISSOURI; WALTER R. MAYNE, as Such Liquidator; WILLIS W. BENSON, as Such Collector; and GERALD J. DONWORTH, as Such Recorder.—No. 38502.—175 S. W. (2d) 828.

Court en Banc, December 6, 1943.

*Charles Claflin Allen, Jr.*, and *Williams, Nelson & English* for relators.

*T. Douglas Moore* for Liquidator of Sewer Districts, Overland Sewer District and Walter R. Mayne, Liquidator, respondents; *Fordyce, White, Mayne, Williams & Hartman* of counsel.

12

*A. E. L. Gardner* and *Julius T. Muench* for St. Louis County Chamber of Commerce, *amicus curiae.*

` *G. Carroll Stribling* for Samuel W. Forder and W. C. Forder, *amici curiae.*

14

██ HYDE, C.—Original proceeding by mandamus to compel the levy and collection of additional uniform taxes against all lands in the Overland Sewer District of St. Louis ██ County, sufficient to pay all outstanding debts, warrants and costs of liquidating the district.

The district was incorporated in 1928 under the 1927 Act (Laws 1927, p. 439) which became Chapter 65, R. S. 1929. (Sec's. 11031-11071). These sections were repealed in 1931 (Laws 1931, p. 355); and in 1933 appointment of a liquidator was provided (Laws 1933-34 Extra Session, p. 117) to liquidate all of the districts in the county. The Board of Supervisors of the Overland District had levied a uniform tax of ten cents per square of one hundred square feet (amounting to $43.56 per acre), employed an engineer and attorney, proceeded to have surveys and plans made including assessments of benefits and damages, and incurred other organization expenses for which warrants were issued. The uniform tax levied (even if fully collected) was insufficient to pay these warrants (8% has been paid them by the liquidator) and relators (warrant holders) seek to compel an additional levy sufficient to pay all warrants in full.

Respondents' position is that there is no authority for any additional levy and that this was settled by the decision of this court in State ex rel. Hotchkiss v. Lemay Ferry Sewer District, 338 Mo. 653, 92 S. W. (2d) 704. Relators contend that the Hotchkiss case was overruled in Jacoby v. Missouri Valley Drainage District, 349 Mo. 818, 163 S. W. (2d) 930, and that under our ruling in the Jacoby case they are entitled to the relief sought. (Because of the view we take on the merits, motions to quash returns or portions thereof are overruled.)

It is true that the majority opinion in the Jacoby case criticised the reasoning of the majority opinion in the Hotchkiss case and refused to apply it to the construction of similar sections of the Circuit Court Drainage District Act [Art. 1, Chap. 64, R. S. 1929; Secs. 12324-12389 (R. S. 1939) Mo. R. S. Ann.] However, the exact question herein presented was not actually before the court in that case. The Jacoby case was not mandamus to compel a levy in connection with the liquidation of a dissolved district, but plaintiff there sought a general judgment upon warrants issued for engineer's services against a district which was still a going concern. The plan of reclamation of the Missouri Valley Drainage District, therein involved, had previously been approved by final decree of the Circuit Court of Holt County which had found the estimated cost of the proposed improvements to be less than the benefits assessed. Thus that district had passed

beyond the stage of preliminary organization where it could be dissolved by adverse decree of the circuit court disapproving its plan, and had reached the status where it could exercise its full powers to build its planned improvements and to levy sufficient assessments to pay for them. Before it did do so, this was made impossible by intervention of a higher authority, the United States Government, which condemned a great part of the lands included in that district for use as a game refuge so that these lands were to be kept flooded instead of being drained. Of course, while that situation greatly affected the ability of that district to pay its debts (by not being able to tax the lands of the United States Government), it in no way affected the liability of that district on its lawfully incurred debts. Furthermore, as pointed out in that opinion, that district had taken no steps toward dissolution and, in that status of its organization, another section (different from those considered in the Hotchkiss case) was applicable for that purpose, namely: Sec. 12361, (R. S. 1939) Mo. R. S. Ann. providing for dissolution upon petition of the landowners. (The possibility of taking in new territory under Sec. 12365 (R. S. 1939) Mo. R. S. Ann., or of readjustment of assessment of benefits under Sec. 12371 (R. S. 1939) Mo. R. S. Ann. might also be suggested.) Certainly, if the Missouri Valley District was liable on its warrants for services of its engineer in preparing the plan of reclamation already approved by final decree of the circuit court, the question of how it might ultimately pay this debt was not material on the matter of the right of the engineer to a judgment fixing such liability [State ex rel. Emerson v. City of Mound City, 335 Mo. 702, 73 S. W. (2d) 1017, Coleman v. Kansas City, 351 Mo. 254, 173 S. W. (2d) 572, l. c. 579]. Thus the fact that Jacoby was entitled to a general judgment against the Missouri Valley District does not settle the question involved here of the liquidator's authority to levy this additional tax on the lands in the Overland Sewer District.

In fact, the situation here is just the opposite of that in the Jacoby case. Here the status of this district was that it never ▮▮▮ had anything but a preliminary interlocutory decree of incorporation, and also that its plan of improvement had been disapproved and its dissolution ordered on the ground that the cost thereof was greater than the amount of the benefits. [Laws 1931, p. 355; State ex rel. Becker v. Wellston Sewer District, 332 Mo. 547, 58 S. W. (2d) 988, l. c. 994.] In that situation, this court in the Hotchkiss case decided there was no authority under Chapter 65, R. S. 1929 to levy taxes which in total with prior levies would amount to more than ten cents per one hundred square feet. That ruling was sufficient to dispose of the Hotchkiss-case, as of this case; and it was not affected by the Jacoby case because a ruling on that question was not essential to the decision of this court in the latter case.

However, in the Hotchkiss case, this court went further and held void all warrants issued after the issuance of a total amount of warrants equal to the total amount of funds that such a ten cent levy would produce. To this extent of its holding, it was overruled, and we think rightly so, by the Jacoby case. That is, if warrants issued to Jacoby (those issued after the total outstanding equaled the amount of the organization levy), before the decree approving the plan for reclamation, were void, he would not have been entitled even to a general judgment on them against the district. Certainly, it is not impossible, or even as unusual as it should be, for valid obligations to exceed the funds which are available for their payment. Of course, warrants are void when political subdivisions of the state, or municipal corporations, exceed constitutional limitations in issuing them; but we know of no good reason why an insolvent sewer district in liquidation should not apply its available funds pro rata on all its outstanding warrants, issued for bona fide expenses, regardless of the time when such warrants were issued. That is the procedure apparently followed by the liquidator in this case (which ought not to be done if such warrants are void); and in so far as the Hotchkiss case held to the contrary it should not be followed. Nevertheless, the Hotchkiss case is still the law, and we think it should be reaffirmed, in its holding that a sewer district, which was only in the preliminary, interlocutory state of incorporation under the provisions of the 1927 Act (Chapter 65, R. S. 1929) when required to be dissolved under the 1931 repeal act, can levy no assessment which in total with prior levies would amount to more than ten cents per one hundred square feet.

There is another reason, not mentioned in the Hotchkiss case, why we think we should still follow the rule there established in the liquidation of districts so attempted to be organized under the repealed 1927 act. That is because (whatever may have been the situation at the time the 1931 repeal act went into effect) the 1933 liquidator act clearly contemplated liquidation without additional taxes (at least above the ten cent levy) sufficient to pay all issued warrants in full. It provided (Sec. 1): "Such liquidator . . . shall have power by and with the approval of the Circuit Court to compromise any or all outstanding indebtedness of the sewer district; . . . and he shall likewise have power, subject to the same approval, where the total uncollected taxes levied by such sewer district exceed the outstanding indebtedness with interest, to compromise such taxes upon such basis as will provide for the payment of the outstanding debts, with interest, taking into account the cost of liquidation and, if a compromise of any indebtedness of the district shall have been made, such compromise of taxes shall take into account the reduction in the indebtedness made by reason of such compromise." Surely this meant compromise valid debts, and not void debts, because specific authority was given "to contest the validity of any claim", and likewise this

is coupled with authority to compromise taxes which must have meant valid taxes. It was also considered so urgent, in 1933, to commence final liquidation of these districts immediately upon the basis of the existing situation that the Act carried an emergency clause which recited: ". . . said sewer districts being now in process of liquidation pursuant to law and in connection therewith many thousands of law suits have been and are being filed in the state courts . . . the title to the homes of several thousand citizens being clouded by reason of the claims pending against such sewer districts and by reason of said law suits, . . ."

Why would so much of the Act be taken up with such provisions if it were intended that further assessments be levied until all obligations were fully paid? In fact, why have such a statutory liquidator at ▮▮▮▮ all, to immediately wind up all such districts, if that were the intent? Why not continue with the Board of Supervisors in charge as the 1931 Act did? Certainly there was no specific authority in this for the liquidator, for which this Act provided, to begin levying further assessments, and the provisions for compromising assessments already levied and reducing obligations by compromise is such a clear indication of a different intent that none should be implied. On the contrary, we think it is apparent that the Legislature intended liquidation by paying whatever proportion of outstanding liabilities the available assets would pay; and, in fact, to reduce claims by compromise wherever possible so that uncollected assessments already made might be compromised and reduced.

The alternative writ of mandamus heretofore issued is quashed. *Gantt, Tipton, Clark, JJ.,* and *Douglas, C. J.,* concur; *Leedy, J.,* concurs in result only; *Ellison, J.,* dissents.