STATE OF MISSOURI ex rel. COLBERNE R. JACOBY, Relator, v. MISSOURI VALLEY DRAINAGE DISTRICT OF HOLT COUNTY, MISSOURI, a Municipal Corporation, CHARLES E. SENTNEY, HARRY MORRIS, GEORGE DAVIS, C. P. RAISER and EARL PORTER, Supervisors, Constituting the Board of Supervisors of said District.—No. 39215.—185 S. W. (2d) 800.

Court en Banc, March 5, 1945.

*J. L. Milligan, Clifford B. Kimberly, Thomas E. Deacy* and *Milligan, Kimberly & Deacy* for relator.

*Culver, Phillip, Kaufmann & Smith* for respondents.

DOUGLAS, C. J.—This is an original proceeding in mandamus. Relator is the assignee of a judgment for $21,076.49 rendered in favor of her late husband Clark E. Jacoby against the Missouri Valley Drainage District of Holt County, a municipal corporation. She brings this action against the district and against the members of its board of supervisors to compel the latter to levy a tax for the purpose of paying the judgment. This court directed the entry of relator's judgment in the case of Jacoby v. Missouri Valley Drainage District, 349 Mo. 818, 163 S. W. (2d) 930, which we will refer to as the first Jacoby case.

The question for decision is whether, under the conditions existing at the present time, the district has authority to levy a tax. If the district has such authority relator's judgment, under our decision in the first Jacoby case, may be properly paid from the proceeds. The district was created under the act authorizing the organization of drainage districts by the circuit court. (Sec. 12324 et seq. R. S. 1939, Mo. R. S. A.) A tax of fifty cents per acre was levied and collected under Section 12333 for preliminary expenses. Clark E. Jacoby was employed as chief engineer. He prepared a plan for reclamation with necessary surveys. The benefits and damages were assessed, the benefits found to be greater, and the plan was confirmed and approved by the circuit court. Before work on the plan was commenced the United States Government condemned about three-tenths of the area of the district for a game refuge making it impossible to carry out the plan of reclamation for the district. Since that event nothing further has been done. No move has been made to dissolve the district.

The entire proceeds of the tax for preliminary expenses authorized by Section 12333 has been spent.

The next levy authorized in organizing a drainage district (Sec. 12340) comes after the benefits and damages are ascertained and the

plan confirmed and approved by the court. When that is done the board of supervisors are then directed to levy a tax of such portion of the benefits necessary to pay the cost of completion of the plan of reclamation. The board of this district could not and can not now make this levy because the intervention of the United States Government has made it impossible to complete the plan as approved.

There is another levy authorized if the district is dissolved on the petition of the property-owners (Sec. 12361). When that is done the debts of the district must be paid before dissolution may be decreed and if the district has not sufficient funds on hand to pay such debts the board of supervisors is directed to levy a uniform acreage tax to pay the same. In the first Jacoby case we held the payment of outstanding warrants and other obligations was a condition precedent to dissolution under this section and indicated that the warrants issued to Jacoby were properly payable out of such a dissolution levy. In the meantime the judgment on these warrants stands as a cloud on the title of the land in the district.

None of the circumstances under which the statutes authorize a levy of a tax now exist. The plan of reclamation approved can not be completed. No action has been taken to dissolve the district.

A tax may not be levied unless expressly authorized by statute. No statute, no tax. State ex rel. American Central Ins. Co. v. Gehner, 315 Mo. 1126, 280 S. W. 416. The power of taxation is exclusively a legislative function. It is not a judicial function. A court may not compel the levy of a tax by mandamus unless there is a specific statute authorizing the tax. State ex rel. Emerson v. City of Mound City, 335 Mo. 702, 73 S. W. (2d) 1017. When authorized, a tax may be levied only within the terms of the statute.

Relator argues the decision in the first Jacoby case authorized the levy of a tax to pay the judgment and is res judicata of that question. Such is not our understanding of that decision. The only point decided was that the warrants issued to Jacoby for his services as engineer constituted a lawful obligation of the district under the facts of that case, even though the funds raised from the levy of fifty cents per acre for preliminary expenses were exhausted. There was no question presented whether the district was authorized to levy a tax under the conditions then existing and which are now the same.

This court has once before had occasion to discuss the extent of our holding in the first Jacoby case. In State ex rel. Quigg v. Liquidator of Sewer Districts in St. Louis County, 352 Mo. 10, 175 S. W. (2d) 828, we refused to compel a tax levy on authority of the first Jacoby case. Discussing that case we said: "The Jacoby case was not mandamus to compel a levy in connection with the liquidation of a dissolved district, but plaintiff there sought a general judgment upon warrants issued for engineer's services against a district which was still a going concern. . . . Certainly, if the Missouri Valley Dis-

trict was liable on its warrants for services of its engineer in preparing the plan of reclamation already approved by final decree of the circuit court, the question of how it might ultimately pay this debt was not material on the matter of the right of the engineer to a judgment fixing such liability.'' Citing State ex rel. Emerson v. City of Mound City, 335 Mo. 702, 73 S. W. (2d) 1017, supra; and Coleman v. Kansas City, 351 Mo. 254, 173 S. W. (2d) 572. Also see our recent decision in State ex rel. County of St. Louis v. St. Johns-Overland Sanitary Sewer District, 353 Mo. 974, 185 S. W. (2d) 780.

 It is our conclusion the first Jacoby case went only so far, and could go only so far, as to hold the warrants issued for the engineer's services were a valid obligation of the district, properly payable out of funds raised by taxes when and if levied. Under existing conditions that decision is not sufficient authority to compel the levy sought in this case.

We have no authority to order a levy until the conditions required by the statutes have been fulfilled.

The peremptory writ is therefore denied. *Hyde, J.*, concurs in separate opinion; *Clark, Tipton* and *Gantt, JJ.*, concur and also concur in separate opinion of *Hyde, J.*; *Ellison, J.*, dissents in separate opinion; *Leedy, J.*, dissents and concurs in separate dissenting opinion of *Ellison, J.*

 HYDE, J. (concurring).—Because of the reference in the dissenting opinion of Ellison, J., to State ex rel. Quigg v. Liquidator of Sewer Districts in St. Louis County, 352 Mo. 10, 175 S. W. (2d) 828, I wish to state my reasons for concurring in the opinion of Douglas, J., herein. As was pointed out in the opinion (written by me) in the Quigg case in discussing the former Jacoby case (Jacoby v. Missouri Valley Drainage District, 349 Mo. 818, 163 S. W. (2d) 930), this district ''reached the status where it could exercise its full powers to build its planned improvements and to levy sufficent assessments to pay for them.'' The action of the United States Government then made it impossible to carry out its approved plan of reclamation, but the district was still legally able to proceed with a new one. However, any such action would require a new assessment of benefits based on such new plan.

Therefore, I do not think that relator's judgment can now be paid out of a levy on the basis of the present benefit assessments because these benefits are based on a plan of reclamation which it is impossible to use and which had to be abandoned. When that plan was made useless before anything was done under it, were not also the benefits assessed under it made uncollectable? Were not these benefit assessments necessarily abandoned with the abandonment of the plan? They were assessed only on the basis of its use. (Sec. 12336 so pro-

vides. All references are to R. S. 1939 and Mo. Stat. Ann.) This drainage article (Art. 1, Chap. 79) contemplates that all payments for the cost of any plan of reclamation shall be in proportion to the benefits each landowner would derive from its completion. Now when it is conceded that work under this plan is impossible and that none can ever be commenced under it, it does not seem to me that payment of any part of the estimated benefits (from its completion) should now be required by mandamus.

Relator's judgment is for engineering work in drawing this plan (before its adoption) and the statute (Sec. 12333) contemplated its payment out of the uniform acreage tax for the preliminary expense of the district. Of course, when work under this plan proceeds (after the decree approving it) then I think it is proper to collect for the whole cost out of the benefits based on it. (Sec. 12340 provides how this shall be done.) However, it does not seem proper to me to pay this judgment by a levy from benefits which it is known cannot be ever realized at all in any part. My view is that if anything is to be paid from benefits, it should be from benefits based on a plan which will be carried out. That could be done on the basis of a new plan for what is left of the district or if additional land is annexed then on a plan for the enlarged district. If no new plan is adopted, it seems to me that the only method of payment left is by a uniform acreage tax upon dissolution. It seems to me that this is what the drainage article contemplates if an effective plan cannot be made. and approved. Even so, relator is not necessarily helpless. She can keep the judgment alive so that no landowner can give a clear title until the district is dissolved or it is otherwise paid. Perhaps also relator might in an equitable proceeding bring all the landowners into court and get a lien established, on all the land in the district, if they will neither proceed with a new plan nor dissolve the district. [Sec. 19, Am. Jur. 119, Sec. 117, also p. 163, Sec. 188.] I do not think mandamus is now available. ■■ *Douglas, C. J.,* and *Tipton, Gantt* and *Clark, JJ.,* concur; *Ellison, J.,* dissents in opinion filed in which *Leedy, J.,* concurs.

■ ELLISON, J. (dissenting).—I respectfully dissent from the holding in the principal opinion that the relator is not entitled to a writ of mandamus against the respondent board of supervisors, to enforce the levy of benefit taxes under Sec. 12340[1] in a sum sufficient to pay relatrix' judgment against the respondent drainage district, recovered in the first "Jacoby case"[2] mentioned in the principal opinion. It was held in that case that the judgment is payable out of

---

[1] References to statutes are to R. S. 1939 and same section numbers in Mo. R. S. A.

[2] Jacoby v. Missouri Valley Drainage Dist., 349 Mo. 818, 163 S. W. (2d) 930.

such benefit taxes, the preliminary flat tax of 50c per acre under Sec. 12333 having been exhausted and the district being without funds. And the Jacoby case was followed and approved on that point in the Quigg case[3] decided only a little over a year ago.

The conclusion of the principal opinion that mandamus will not lie is based on the following facts. The relatrix' petition for mandamus alleges, among other things: that the Federal Government has established a game refuge in the district occupying three-tenths of its area; that the present plan for reclamation is thereby rendered impossible of consummation; that under existing conditions the cost of construction would exceed the benefits; and that the district and its supervisors nevertheless have failed to proceed with the original plan, or some other, or to issue bonds, or to take steps through the landowners for its dissolution, as permited by Sec. 12361. The respondents' return admits these facts and alleges the board of supervisors have no authority to levy a benefit tax because the intrusion of the Federal Government has thwarted the whole project, abated the drainage district proceeding in the circuit court and rendered it null and void as to all the landowners in the district.

The principal opinion upholds this contention, as does the concurring opinion of Hyde, J. The view taken in both opinions is that since the parties on both sides concede the interference of the Federal Government has made impossible the consummation of the original plan for reclamation, therefore no benefit tax can be levied under Sec. 12340, unless some new plan for reclamation be adopted or the district be 'dissolved. The principal opinion refers to the provisions in Sec. 12361, supra, authorizing a majority (in acreage) of the *landowners* in the district (not the supervisors) to institute a proceeding in the circuit court for the dissolution of the district, this statute making it a condition precedent to such dissolution that the district's debts be paid. The opinion then, in effect, warns the landowners that relatrix' judgment will stand as a cloud on their titles unless the district is dissolved, in which event relatrix' judgment will have to be paid by a tax levy.

The effect of both opinions is that relatrix cannot now compel the levy of a benefit tax under Sec. 12340 or a uniform acreage tax under Sec. 12361, but must wait until a new plan for reclamation is adopted, or a majority of the landowners voluntarily prosecute dissolution proceedings. She and her husband have already waited over 16 years since the district was fully incorporated in November, 1928. How much longer will she have to wait; and is it true that no benefit tax can now be levied under Sec. 12340?—conceding that in the absence of

---

[3]State ex rel. Quigg v. Liquidator of Sewer Districts in St. Louis County, 352 Mo. 10, 17, 175 S. W. (2d) 828, 829(1), 830(2).

fraud she cannot by mandamus compel the landowners to dissolve the district, since the statute vests a discretion in them.

In my opinion it would work a legal fraud on the creditors of the district to permit the supervisors to assert in this court that the district is now defunct, while at the same time the landowners avoid payment of its debts refraining from the institution of a proceeding for dissolution—this would be a legal fraud, I say, *if* the relatrix had not pleaded the above fact in her petition. For it is obvious that the landowners cannot "abate" the district out of debt by mere inaction. However, since she has alleged that fact, respondents are, of course, perfectly justified in taking her at her word and proceeding on that theory; but they also must be bound by the same theory.

Now, the relatrix not only alleges that the interference of the Federal Government has rendered the completed improvement unworkable; she also alleges the supervisors refuse to proceed with *any* plan, or to issue bonds, or to take steps through the landowners for the dissolution of the district. In other words, the drainage project has been abandoned. Respondents admit this. Relatrix' cause of action is as good now as it can ever be unless a new plan for reclamation should be voluntarily adopted under Sec. 12350, or new land be taken in under Sec. 12365, or the landowners voluntarily take steps to dissolve the district under Sec. 12361, supra. Yet she cannot compel any of these things because she owns no land in the district and is not legally interested either in its physical completion or dissolution.

Her only interest is in the collection of her judgment for work done by her deceased husband and accepted by the district after it was validly organized, whereby it obtained an approved plan for reclamation which then was workable. It was the duty of the supervisors at that time under Sec. 12340 to levy without unnecessary delay a benefit tax sufficient to pay for the "completion" of the district according to that plan; and if that tax had been levied relatrix' judgment would have been payable out of it under the Jacoby and Quigg decisions, supra. But no such benefit tax had been levied before the Federal Government made the plan for reclamation unworkable by locating its game refuge there; and the district supervisors now contend they are not obliged to raise further funds for the payment of the judgment, because there is no existing plan for reclamation on which to base them.

In my opinion these facts merely raise the question whether the district is excused from paying relator's judgment because the project has been abandoned, and it will neither alter it nor dissolve and pay debts. If it had previously levied the benefit tax and had money on hand, the supervisors could be mandamused to pay the judgment out of those funds. What is there to prevent the levy now of the same tax that *should* have been levied, notwithstanding the plan for reclamation

has since become unworkable? True, Sec. 12340 contemplates the levy of a benefit tax based on a plan for reclamation which will go forward to completion. But when such a plan is abandoned by the district after part of the intended work has been done, the project *is* physically ''completed'' at that point because of the determination that no further work shall be done. Such is the rule as to mechanics' liens. 36 Am. Jur., sec. 35, p. 38.

If the respondent district, itself (instead of the Federal Government) had by some means rendered impossible the full completion of the plan for reclamation, certainly it could not interpose that act as a defense when asked to levy a benefit tax on the theory of constructive completion.[4] The only question in this case, it seems to me, is whether the district is relieved here because the interference of a third party prevented completion of the plan after relatrix' decedent had done his work. That ordinarily is no excuse.[5] The rule has been applied in this State in mechanics' lien cases.[6] So too of Acts of God.[7] The Quigg case said, speaking of the intervention of the Federal Government in this very case, ''it in no way affected the liability of that district on its lawfully incurred debts.'' And since that is true, is it not persuasive that Sec. 12340 *means* a tax may be levied to discharge that liability? There is no hiatus in these drainage statutes which leaves stranded in case of only partial completion, those who have done work for the district. The very fact that Sec. 12361 requires debts to be paid before the district can be dissolved, shows that.

Regarding the citation in the concurring opinion to 19 Am. Jur., sec. 117, p. 119, sec. 188, p. 163. The first of these discusses the power of equity to deal with novel situations; the other section deals with its power to enforce a decree of the same or a different court as the exigencies may require. But those citations are inapplicable, in my opinion. If it be true that there is *no* statute which relatrix can invoke to compel the levy of a tax to pay her debt, then equity cannot help her any more than law. The principal opinion argues on that very ground that relatrix is without remedy now, because the power to tax is purely statutory.

If the views expressed above are correct, ▮▮▮▮ our alternative writ should be made peremptory on the respondent district and supervisors for the levy of a tax within the benefit assessments, under Sec. 12340, sufficient to pay relatrix' judgment, interest and costs in the Jacoby case and the costs in this case, as prayed. *Leedy, J.,* concurs.

---

[4] 13 C. J., sec. 721, p. 647, sec. 724, p. 650; 12 Am. Jur., sec. 329, p. 885.

[5] 12 Am. Jur., sec. 370, p. 941.

[6] Concrete Engineering Co. v. Grande Bldg. Co., 230 Mo. App. 443, 464-5, 86 S. W. (2d) 595, 608(15).

[7] 12 C. J., sec. 715, p. 641; 12 Am. Jur., sec. 368, p. 936.