The STATE of Missouri, at the relation of Clarence A. POWELL, Appellant-Respondent,

v.

John M. CAPPS, President and Member of the Board of Supervisors of the Mingo Drainage District, a Public Corporation, H. C. Cookson, William Lewis and A. J. Johnston, Members of the Board of Supervisors of the Mingo Drainage District, a Public Corporation, and T. D. Shoemate, Secretary of the Board of Supervisors of the Mingo Drainage District, a Public Corporation, Respondents-Appellants.

No. 50498.

Supreme Court of Missouri,

Division No. 2.

July 13, 1964.

Motion for Rehearing and to Transfer to Court En Banc Denied Sept. 14, 1964.
Sept. 14, 1964.

C. A. Powell, Powell, Jones & Ringer, Dexter, for relator-appellant.

Briney & Welborn, Joe Welborn, James E. Spain, Elvis A. Mooney, Claude Arnold, Dexter, James L. Hawkins, St. Louis, for respondents-appellants, John M. Capps, et al.

STOCKARD, Commissioner.

This is an appeal in a proceeding for mandamus whereby relator seeks to require the last board of supervisors of Mingo Drainage District (hereafter referred to as "Mingo" or the "district") to levy a tax to obtain funds with which to pay certain portions of a judgment obtained by him against the district.

Mingo was organized on April 22, 1915, for a period of fifty years, pursuant to Chap. 41, Art. I, RSMo 1909. (Subsequent references to the above statutes will be to the corresponding section in Chapter 242 RSMo 1959, V.A.M.S.) The area of Mingo, after one extension of its original boundaries, contained approximately 33,786 acres of land in Wayne and Stoddard Counties. Benefits from the proposed drainage project were assessed against the lands and property in the district totaling $1,025,703.80. Thereafter, pursuant to Section 242.450 the board of supervisors of Mingo levied taxes against the various tracts of land in the district in proportion to the assessed benefits to pay the costs of the completion of the proposed works and improvements, and said taxes were equal to the total of the assessed benefits. Since bonds were to be issued, the amount of the interest, as estimated by the board of supervisors, which would accrue on such bonds prior to maturity was added to the tax levied on each tract of land. This levy was properly entered on the prescribed tax books and made of record. During the years 1917 to 1922 Mingo issued bonds, including the bonds in the principal amount of $117,900 which are now owned by relator Clarence A. Powell, which were all registered by the Auditor of the State of Missouri and sold by Mingo to obtain funds to pay for the construction of the drainage project. None of the bonds matured within five years from the date of issue but all matured within 20 years after issue, the latest maturity date being in 1941. Attached to each bond were 6% interest coupons, payable semi-annually until maturity of the bond to which attached. Each year up to and including 1940, as authorized by Section 242.460, the board of supervisors levied an annual installment of the total taxes (previously levied pursuant to Section 242.450) which it determined to be sufficient to pay the bonds and coupons which would become due the following year. Annual tax books were prepared by the secretary of the board of supervisors of Mingo, but in 1940 and for several years prior thereto these books were not delivered to the county tax collector in Wayne County and the township tax collectors in Stoddard County, as required by Section 242.540, apparently because the taxes were not being paid by the landowners in the district and the collectors refused to make the bond required by the above statute. It is evident that almost from the first Mingo began defaulting on payments of the coupons and bonds when they became due. From the time of its organization until and including 1940, the last year an annual installment tax levy was made, many of the taxes that had been annually levied were not paid. For the years 1928 and 1940 (and apparently thereafter) no tax suits were brought by or on behalf of Mingo to collect delinquent drainage taxes, and no payment has been made on any bond or coupon since about

1926. There is no contention that the taxes, if collected, would not have been sufficient to pay all the bonds and coupons when due. The collection of all taxes previously levied by Mingo is now and for many years has been barred by Section 140.160.

In 1941 and 1943 Clifton A. Luther, as owner of matured bonds issued and sold by Mingo and upon which Mingo had defaulted in payment of principal and at least some of the coupons, brought suit and obtained judgments against Mingo totaling $227,251.25. The principal amount of the bonds sued on was $117,900; the total amount of the coupons sued on was $42,120; and the total interest on the bonds and coupons after maturity included in the two judgments was $67,285.25. (The difference of $54.00 between the total of the two judgments and the total amount of the bonds, coupons and interest is not explained).

On May 31, 1943, Clifton A. Luther assigned the above two judgments to E. E. Calbreath and Mae Calbreath who in 1951 brought suit on the said judgments in the Circuit Court of Stoddard County and obtained a judgment against Mingo in the amount of $367,907.96. On July 7, 1962, E. E. Calbreath (Mae Calbreath then being deceased) assigned the above judgment to relator for the consideration of $6,000. On July 23, 1962, relator filed suit against Mingo on the assigned judgment, and on October 1, 1962, he obtained a judgment against Mingo in the amount of $591,105.56, which bears interest at the rate of 6% per annum. This judgment included the principal of the bonds in the amount of $117,900 and interest (including the coupons) in the amount of $473,205.56.

In 1945 the United States acquired title to approximately 22,000 acres of the land located within the boundaries of Mingo, which was about two-thirds of the area, for use as a game refuge. When Mingo was organized, and the benefits of the drainage project were assessed against the various tracts of land located therein, 79.87% of the total benefits were assessed against land which was subsequently acquired by the United States, and 20.13% of the total benefits were assessed against the land remaining in the district and not now owned by the United States.

Mingo has no funds on hand with which to make any payments on the principal of the bonds, the coupons, or the accrued interest. On April 23, 1963 relator filed his petition for a writ of mandamus seeking to compel those persons whom he contends constitute the last board of supervisors of Mingo to levy a tax on all lands and property in the district, not now owned by the United States, in proportion to the benefits assessed and in an amount sufficient to pay $473,205.56, the amount which relator asserts constitutes interest included in the judgment he obtained on October 1, 1962, plus interest at 6% from October 1, 1962, on $591,105.56, the total amount of the judgment. An alternative writ granting the relief requested was issued by the Circuit Court of Stoddard County on June 20, 1963. After a hearing, and on October 26, 1963, the court issued its peremptory writ of mandamus requiring those found to constitute the last members of the board of supervisors of Mingo to levy a tax on the lands and property in the district, not owned by the United States, in proportion to assessed benefits, and in an amount (1) sufficient to pay to relator the sum of $95,256.28 which is 20.13% of $473,205.56, and (2) sufficient to pay to relator 20.13% of the sum representing 6% interest per annum on $591,105.56 from and after October 1, 1962. All parties have appealed. Relator contends that the trial court should have required the levy of a tax sufficient to pay the amounts requested in his petition. The individuals and Mingo, whom we shall hereafter designate as defendants, contend that no levy of a tax should be required.

■ Chapter 242 RSMo 1959, V.A.M.S., is a code unto itself, and "It fixes the rights and liabilities of all with respect to matters involved. * * * It grants and withholds power and authority, accordingly as it may

be provided therein." State ex rel. Walker v. Locust Creek Drainage District, 228 Mo. App. 434, 67 S.W.2d 840, 847; Dalton v. Fabius River Drainage Dist., 238 Mo.App. 665, 184 S.W.2d 776, 784. The causes of action on the bonds, on the coupons, for interest on the bonds and coupons which accrued after maturity, and for interest on the Luther and Calbreath judgments, are all merged in the judgment obtained by relator on October 1, 1962. State ex rel. Emerson v. City of Mound City, 335 Mo. 702, 73 S.W. 2d 1017, 94 A.L.R. 923. However, while the judgment obtained by relator against Mingo is conclusive as to all matters of defense, if any, which could have been made against relator's claim, it "does not preclude respondents [those whom we designate as defendants herein] from asserting in this mandamus proceeding the absence of authority on their part to levy the additional tax sought by [relator] to pay the claim. The suit wherein the judgment was obtained by [relator] undoubtedly determined finally [his] right to a judgment * * *, but such judgment, unquestioned and valid though it be, cannot supply authority to a creature of statute such as [Mingo] * * * drainage district to levy taxes if such authority is not expressly granted by the statutes to which it must look for its power and authority to levy such taxes." Bushnell v. Mississippi & Fox River Drainage District, 233 Mo.App. 931, 111 S.W.2d 946, 949. See also State ex rel. Jacoby v. Missouri Valley Drainage Dist. of Holt County, 353 Mo. 1005, 185 S.W.2d 800, 802. In the Bushnell case it was further pointed out that if the drainage district had any property subject to execution, the judgment holder would undoubtedly have the right to have execution levied on such property to satisfy his judgment, but if he wants "the high governmental power to tax the lands of property owners in the district exercised in [his] favor to pay the judgment, [he] must show that the law authorizes such tax to be levied and that [he occupies] a status under the law entitling [him] to have the power exercised for that purpose."

Relator admits in his brief that in view of the fact that the taxes previously levied for the payment of the bonds issued by Mingo were equal to the total of the benefits assessed against the lands and property in the district "no tax can now be levied by Mingo to pay the $117,900, the principal amount of the bonds, included in relator's judgment." He asserts, however, that the board of supervisors is granted authority to levy a tax to obtain funds to pay "the amount of the interest coupons and other interest included in his judgment," and that a tax should be levied against the land in Mingo not owned by the United States to obtain sufficient funds to pay the entire amount of his judgment less $117,900, and not only 20.13% thereof as directed by the trial court.

When we analyze the basis for relator's judgment of October 1, 1962, we find that he is seeking to have taxes levied to obtain funds to pay those portions of his judgment (1) based on the coupons (which is interest on the bonds prior to maturity), and (2) based on interest on the bonds and the coupons which accrued after their maturity. In addition, he seeks to have taxes levied to obtain funds to pay that part of the judgment which in fact is interest on interest (because when the Luther and Calbreath judgments were obtained the then accrued interest was included in the principal of the judgments and the judgments bore interest at six per cent), and also to pay interest on relator's judgment (which also includes interest on interest).

We find no statutory authority, and relator refers us to none, for a drainage district to levy a tax to obtain funds to pay interest on a judgment or that portion of relator's judgment of October 11, 1962 which is in fact based on interest on interest. In determining whether the board of supervisors of Mingo now has authority to levy a tax to obtain funds to pay that portion of relator's judgment based on interest on the bonds which accrued before maturity, that is, the coupons, and interest on the bonds and coupons which accrued after maturity,

it will be helpful to include as a part of that determination a review of the statutory provisions (other than those authorizing the levy of a tax for organization and maintenance expense) for financing a drainage district such as Mingo.

■ Section 242.450 authorizes the levy of a tax "of such portion of said benefits" on the lands and property in the district as may be found necessary by the board of supervisors to pay the costs of completion of the proposed plan for reclamation. This tax is "apportioned to and levied on each tract of land or other property in said district in proportion to the benefits assessed and not in excess thereof." In the event the "amount of total tax levied under the provisions of section 242.450" is insufficient to pay the cost of the improvements in the plan for reclamation, and amendments thereto, the board of supervisors may make an "additional levy to provide funds to complete the work; provided, the total of all levies of such tax does not exceed the total amount of benefits assessed." Section 242.470. It is from the proceeds of this tax that the cost of the improvements called for in the plan for reclamation is to be paid (if the tax is paid in one installment as hereafter noted) or the principal of bonds is to be paid (if bonds are issued as hereafter noted). Par. 2, Section 242.480. When bonds are issued and sold to obtain funds to pay the cost of the drainage works and improvements (par. 9, Section 242.480) they are "to mature at annual intervals within twenty years, commencing after a period of years not later than five years," and shall bear interest from date of issue "at a rate not to exceed six per cent per annum, payable semiannually." Par. 1, Section 242.480. In such event there shall then "be included and added to the said tax" the amount of the interest, as estimated by the board of supervisors, which will accrue on such bonds. Section 242.450. This necessarily refers *only* to the interest on the bonds from issue to maturity, as represented by the coupons attached thereto,

because that is the only interest to accrue on the bonds which at that time could be estimated. While the amount of the levy to pay the cost of the improvements, or to pay the principal of the bonds when bonds are issued, may not exceed the amount of the assessed benefits (Sections 242.450 and 242.470), "the interest to accrue on account of the issuing of said bonds shall not be construed as a part of the costs of construction in determining whether or not the expenses and costs of making said improvements are or are not equal to or in excess of the benefits assessed." Section 242.450. The total tax thus determined shall, after the necessary recording and filing, constitute a lien on each tract of land and other property in the district. Section 242.590. This tax may be paid at one time if payment is made before a date fixed by the board of supervisors, and in that event the amount added to the tax for interest on the bonds accruing prior to maturity need not be paid. Section 242.570. If the tax is not paid in one sum, then the board of supervisors shall "each year thereafter determine, order and levy the amount of the annual installment of the total taxes levied under section 242.450" (and presumably also under Section 242.470, but it is not specifically so stated) which installment shall become due and be collected each year. Section 242.460. In making this "annual tax levy" the board of supervisors is to take into account the "maturing bonds and interest on all bonds," and make "ample provisions in advance for the payment thereof." In addition, in the event "the proceeds of the original tax levy made under the provisions of section 242.450 are not sufficient to pay the principal and interest of all bonds issued, then the board of supervisors shall make such additional levy or levies upon benefits assessed as are necessary for this purpose, * * *." Par. 4, Section 242.480.

■ The above are all the statutory provisions pertaining to the authority of the board of supervisors of Mingo to levy a tax to obtain funds to pay the principal

of the bonds or the coupons. These provisions do not pertain to the right of the board of supervisors to levy a tax to obtain funds to pay interest on bonds or coupons after maturity. It is provided in par. 3, Section 242.480 that bonds and coupons not paid at maturity shall bear interest at 6% per annum until paid, and that the "interest shall be appropriated by the board of supervisors out of the penalties and interest collected on delinquent taxes or any other available funds of the district." While this provision designates the source of funds from which payment of interest accruing on the bonds and coupons after their maturity may be made, it does not grant any authority to levy a tax to obtain funds for that purpose.

Relator relies primarily on the provision in par. 4, Section 242.480, quoted above, which authorizes an "additional levy or levies upon benefits assessed" to pay the "principal and interest of all bonds issued." He asserts that this provides the necessary statutory authority for the board of supervisors to levy a tax at this time to obtain funds to pay that portion of his judgment which he contends represents interest and to pay accrued interest on his judgment. He does not distinguish between interest on the bonds before maturity represented by the coupons, and interest on the bonds and coupons which accrued after maturity. Neither does he distinguish between the above interest and interest on his judgment and the portion of the judgment based on interest on interest. His argument, as we understand it, is that (1) the interest estimated by the board of supervisors (the amount of the coupons) added to the tax levied pursuant to Section 242.450 in the early stages of the organization of the district is not to be considered in determining whether the cost of improvements is in excess of the assessed benefits; (2) there is no requirement that "the coupons issued by a drainage district must be paid out of the estimated tax levied under Section 242.450;" (3) money obtained by taxation constitutes "available funds" referred to in par. 3, Section 242.480 (which pertains only to payment of interest on bonds and coupons after maturity); and (4) in conclusion, while "the additional taxes cannot be levied to pay the principal of bonds in excess of the assessed benefits, * * * there is no such restriction as to the payment of interest, and therefore, the board should yet, under Section 242.480(4) make an additional levy to pay the interest included in relator's judgment."

We agree with the first two contentions of relator as above stated, and for the purposes of this opinion we shall assume the correctness of the third contention. However, we cannot agree with the fourth. Relator ignores the fact that by par. 4, Section 242.480, wherein the board of supervisors is authorized to make "such additional levy or levies" as are necessary to pay the principal and interest of all bonds issued, the authority there granted to obtain funds to pay principal or interest is limited to make such additional levy or levies *"upon benefits assessed,"* and that this court *en banc* has said that the term "upon benefits" means "within" the total of the assessed benefits. See State ex rel. Sturdivant Bank v. Little River Drainage Dist., 334 Mo. 753, 68 S.W.2d 671, 675. We add here that it is our opinion that the authority contained in par. 4, Section 242.-480 to make an additional levy to obtain funds to pay interest is limited to the payment of the coupons, and does not include the interest accruing on bonds and coupons after maturity. However, in view of our conclusion subsequently set forth, that under the particular facts of this case this statute does not authorize the levy of a tax at this time to obtain funds to pay any interest, this is immaterial in this case.

Relator admits that the language in par. 4, Section 242.480 does not authorize a levy to obtain funds to pay the principal of the bonds because the amount of previous levies is equal to the amount of the benefits assessed, and we agree. But, the limitation therein contained as to

the authority to levy taxes to obtain funds to pay the bonds applies equally to the authority to levy a tax to pay interest. Par. 4, Section 242.480 is a taxing statute, and it has long been the rule, and properly so, that a taxing statute "must be strictly construed and, if the right to tax is not plainly conferred by statute, it will not be extended by implication." Osterloh's Estate v. Carpenter, Mo., 337 S.W.2d 942; A. P. Green Fire Brick Co. v. Missouri State Tax Commission, Mo., 277 S.W.2d 544; State ex rel. and to Use of Benson v. Union Elec. Co. of Mo., 359 Mo. 35, 220 S.W.2d 1. The board of supervisors is granted authority to "make such additional levy or levies" for the purpose of obtaining funds "to pay the principal and interest of all bonds issued" *only* when such levy or levies can be made "upon benefits assessed" which means "within" the total of the benefits assessed, and it is admitted that the total of the previous levies now makes that impossible. It is true that in making the original levies at the time of the organization of Mingo, the statute which authorized the levy of a tax at that time to obtain funds to pay the coupons does not contain the limitation in par. 4, Section 242.480. But these are two different taxes authorized by different statutory provisions to be made at different times, and we cannot by implication read into one statute an exception contained in the other which is contrary to the plain, concise and unequivocal language used.

We are not concerned with *why* the Legislature limited the authority in par. 4, Section 242.480 to make an *additional* levy in the manner it did when it did not in the same manner or to the same extent limit the authority granted by Section 242.450 to levy a tax to obtain funds to pay the coupons. We are concerned only with the fact that it did do so, and we conclude that under the facts of this case par. 4, Section 242.480 does not grant authority to make an additional levy to obtain funds to pay any interest for the same reason it fails to grant authority to make an additional

levy to obtain funds to pay the principal of the bonds. However, there can be factual situations where the limitation imposed would not bar such a levy. For such a factual situation where an *additional* levy pursuant to this statutory authority was ordered to obtain funds to pay the principal and interest on drainage district bonds, see Diekroeger v. Jones, 235 Mo. App. 1117, 151 S.W.2d 691.

Par. 4, Section 242.480 is the only statute granting authority to the board of supervisors of Mingo to levy a tax which relator contends constitutes authority to levy a tax to obtain funds to pay that part of his judgment which he asserts is based on interest, and to obtain funds to pay interest on his judgment. However, it is our conclusion after a careful and thorough examination of its wording, its relation to the other provisions of Chapter 242, and its part in the overall plan for financing a drainage district such as Mingo, that it does not grant authority to the board of supervisors of Mingo, under the facts of this case, to levy a tax at this time to obtain funds to pay any interest, whether it is interest on the bonds before maturity (that is, the coupons), interest on the bonds and coupons after their maturity, or interest on relator's judgment. For the above reasons the judgment of the trial court in issuing its peremptory writ of mandamus was erroneous.

The above conclusion makes it unnecessary to rule on other contentions urged in the briefs.

The judgment is reversed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.